**UNITED STATES of America,
Appellee,**

v.

**Eugene BRITTON, a/k/a Eugene Junior
Britton, Appellant.**

**No. 73–1890.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1974.

Decided July 23, 1974.

Ted M. Henson, Jr., Poplar Bluff, Mo., for appellant.

Donald J. Stohr, U. S. Atty., and Jean C. Hamilton, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The case before us arises out of a planned and staged (a "fake") automobile accident. As a result thereof the defendant, who had some twenty-three policies of insurance in force, made numerous claims thereunder for recompense for personal injury and property damage. The scheme fell apart when the other driver involved confessed the fraud. Defendant was charged with using the mails to defraud[1] and convicted and sentenced on ten counts of the indictment.[2] His appeal to us challenges the sufficiency of the evidence and the validity of the conviction under the interpretation of the mail fraud statute in United States v. Maze, 414 U.S. 395, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974).[3]

 Under the facts reasonably consonant with the jury's findings of guilt and viewed most favorably to the Government,[4] the defendant's plan was that Charles Myers would rent a truck, using defendant's money, and strike defendant's parked truck. He did so. Defendant then feigned injuries and made claims for benefits under his policies and was paid various sums (by check) as a result of the claims. One such claim was made under a Traveler's policy which was issued, and made effective, the day of the collision, covering accidents by any means of transportation.

 It is clear upon the record, and not denied, that the defendant mailed, or caused to be mailed, applications for insurance, claim forms and other communications in connection with his claims, and that he received in the mail as a result thereof certain checks.[5] It is his argument to us that the statute does not apply because "the mails were not used for the purpose of executing the scheme in question" and "played no direct part in the furtherance of the scheme," they being used only as a convenience - "because of the element of distance" and that their use was unnecessary to the consummation of the fraud because the

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 18 U.S.C. § 1341. The parts applicable hereto provide as follows:

 Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, * * * for the purpose of executing such scheme or artifice or attempting so to do, * * * knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any [matter or thing whatever to be sent or delivered by the Postal Service] shall be fined not more than $1,000 or imprisoned not more than five years, or both.

2. Count 1, the mailing by defendant of applications for insurance; Counts 6-8, 14, the mailings by defendant and others to insurance companies of communications and forms in connection with claims made; Counts 9-13, the mailings by insurance companies of checks payable to defendant or for his benefit in payment of claims made.

3. Counsel were requested upon oral argument to submit supplementary briefs respecting their positions under *Maze*.

4. The general rule must again be recognized that all evidence is to be viewed in a light most favorable to the government as the prevailing party and all reasonable inferences must similarly be resolved in its favor. Koolish v. United States, 8 Cir., 1965, 340 F.2d 513, 519, cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724; Smith v. United States, 8 Cir. 1964, 331 F.2d 265, 278, cert. denied, 379 U.S. 824, 85 S.Ct. 49, 13 L.Ed.2d 34, rehearing denied, 379 U.S. 940, 85 S.Ct. 321, 13 L.Ed. 2d 350.
 Anderson v. United States, 369 F.2d 11, 13 (8th Cir. 1966), cert. denied, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967).

5. The various mailings, and the receipts of various checks, are set forth in separate counts of the indictment. These we deem it unnecessary to detail, since no attack is made as to their mailings, purpose or content.

instruments could just as well have been hand carried as mailed. Defendant asserts that the teachings of *Maze* require reversal.

*Maze* lends no support to such arguments and, in fact, is dispositive thereof. In the *Maze* case the defendant used a stolen Bank Americard for the purpose of obtaining certain goods and services at several motels. Each of the motels transmitted their sales invoices to the card-issuing bank by mail, this being the customary method by which invoices were transmitted to the bank. The Supreme Court, affirming the Sixth Circuit[6] held the mail fraud statute inapplicable:

> [T]he mailings here were directed to the end of adjusting accounts between the motel proprietor, the Louisville bank, and Meredith, [the owner of the card] all of whom had to a greater or lesser degree been the victims of respondent's scheme. Respondent's scheme reached fruition when he checked out of the motel, and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss. Indeed, from his point of view, he probably would have preferred to have the invoices misplaced by the various motel personnel and never mailed at all. [Footnote omitted]

94 S.Ct. at 649.

Here, on the contrary, the communications were a necessary part of the transaction which led to the defendant's receipt of the monies so fraudulently claimed and obtained. United States v. Owen, 492 F.2d 1100 (5th Cir. 1974). The use of the mails, as in United States v. Gaskill, 491 F.2d 981, 984 (8th Cir. 1974) "was an integral element of the scheme to defraud," here, by supplying the insurance companies with the information necessary to the consummation of the fraud, and to the defendant's realization of the fruits thereof.

■ Moreover, it is not a *sine qua non* of the statutory offense that there be negation of means of communication other than the mails. The defendant argues that the checks, for example, "could just as well have been hand carried to Eugene Britton as mailed," or, we add, that conceivably railway express could have been used, or a parcel delivery service. But the test, under the statute, is realistic, not fanciful. "It is not necessary," held the Supreme Court in Pereira v. United States, 347 U.S. 1, 8–9, 74 S.Ct. 358, 98 L.Ed. 435 (1954),[7] "that the scheme contemplate the use of the mails as an essential element," but merely that it be "incident to an essential part of the scheme," and that "such use can reasonably be foreseen, even though not actually intended."

So tested, the violation in the case before us is obvious. Regardless of the possibility of delivery by hand, the fact is that the instruments essential to the consummation of the fraud, the false claims and misrepresentations relied upon by the insurance companies, were mailed, and the defendant could reasonably have foreseen that the mails would be used. Moreover, it is clear that in this case the fraud did not reach fruition until the checks were mailed to the perpetrator. *See* United States v. Miles, 498 F.2d 394 (8th Cir. 1974). There was no error in the application of the statute to the facts disclosed.

■ The defendant complains, as well, of the asserted insufficiency of the evidence. He argues that Charles Myers, his accomplice, who testified for the Government, was not of a good character and thus not to be believed. He points out that Myers cherished his sto-

---

6. 468 F.2d 529 (6th Cir. 1972).

7. The *Pereira* case is cited in both the opinion of the Court, and the dissenting opinion in *Maze, supra.*

ry in secret for some four months before disclosing it. He stresses also certain medical testimony arguably favorable to him. The Government's evidence controverted the foregoing in various respects. Upon an examination of the entire record we find defendant's argument without merit. There was sufficient evidence to sustain the verdict. Whatever conflicts there may have been in the testimony were resolved by the trier of facts. *See* Anderson v. United States, *supra* note 4, 369 F.2d at 14, and cases there cited. No errors are asserted as to the receipt of evidence or instructions to the jury.

The judgment of conviction is affirmed.