**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Daniel J. LEDESMA,
Defendant-Appellant.**

**No. 79–2003.**

United States Court of Appeals,
Seventh Circuit.

Argued April 16, 1980.

Decided June 25, 1980.

Rehearing and Rehearing En Banc
Denied Sept. 3, 1980.

Allan A. Ackerman, Chicago, Ill., for defendant-appellant.

Thomas P. Sullivan, U. S. Atty., William A. Spence, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and SPRECHER, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, District Judge.

Daniel J. Ledesma appeals his conviction on three counts of mail fraud in violation of 18 U.S.C. § 1341,[1] and one count of making a false statement to obtain a bank loan in

---

* The Honorable William J. Jameson, Senior District Judge of the United States District Court for the District of Montana, is sitting by designation.

1. Under 18 U.S.C. § 1341, whoever uses the mails or causes the use of the mails for the purpose of executing a scheme or artifice to defraud "shall be fined not more than $1,000 or imprisoned not more than five years, or both".

violation of 18 U.S.C. § 1014.[2] With the exception of the conviction of one of the mail fraud counts, we affirm.

## I. Factual Background

In December, 1975, Ledesma and his wife applied for a $6,000 loan at the Pioneer Trust and Savings Bank in Chicago (Pioneer), purportedly to purchase a motor home. They furnished a Wisconsin certificate of title which indicated that the sellers and current owners of the motor home were Linda and Scott Johnson of Rock Spring, Wisconsin. The bank approved the loan, and the Ledesmas executed a security agreement in favor of the bank. The $6,000 was deposited in Ledesma's account.

Ledesma insured the vehicle with Foremost Insurance Company (Foremost). The application for insurance indicated that there was no lien on the vehicle. Theft coverage was provided.

In July, 1976, Ledesma reported to Edward R. Williamson, a Foremost claims adjuster, that the motor home had been stolen. Williamson mailed an affidavit of loss form to Ledesma, with a request that Ledesma complete the form and also provide the bill of sale he had received from the Johnsons. Williamson received an incomplete affidavit of loss by return mail. The bill of sale was not furnished. In a later telephone conversation, Ledesma told Williamson that he had purchased the vehicle with cash and did not have a bill of sale. To show ownership Ledesma sent Williamson by mail a copy of the promissory note and security agreement he had given Pioneer.

Williamson mailed Ledesma's claim to Foremost's headquarters in Indianapolis. On October 27, 1976, the Indianapolis office mailed Williamson a check for $10,695. Two days later Williamson presented the check to Ledesma and the bank. Ledesma executed a completed proof of loss, which Williamson mailed to Foremost's headquarters in Indianapolis.

A subsequent investigation revealed the fraudulent scheme. Tracing the vehicle's identification number, it was found that the vehicle bearing that number had been sold by a Wisconsin dealer to one Elwin Andre in September, 1974, and Andre in turn had sold it in California in 1977. At the time of the purported sale from the Johnsons to Ledesma, Andre was using the vehicle. It was never stolen.

Ledesma and his wife had rented a post office box in the names of the purported sellers, Linda and Scott Johnson. This provided a mailing address for the Wisconsin certificate of title, which appellant furnished Pioneer to show ownership when he procured the loan.[3]

Ledesma was indicted in February, 1979. The jury found him guilty on all four counts. The trial judge sentenced Ledesma to three years imprisonment for each of the three mail fraud counts and one year imprisonment on the count of fraudulently obtaining a bank loan, the sentences to run consecutively, and imposed fines of $1,000 on each of the first three counts, and $5,000 on the fourth count.

## II. Contentions on Appeal

Appellant contends that (1) he was deprived of a fair trial because the judge failed to follow the requirements of Fed.R. Evid. 103(c) and allowed the prosecutor to suggest inadmissible evidence to the jury; (2) the evidence was insufficient to warrant appellant's conviction for mail fraud; (3) the court, in violation of Fed.R.Crim.P. 30, deprived appellant of an opportunity to object to the instructions given to the jury;

2. Under 18 U.S.C. § 1014, "Whoever knowingly makes any false statement . . . for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation . . . shall be fined not more than $5,000 or imprisoned not more than two years or both".

3. Appellant had established a chain of title by presenting a counterfeit bill of sale to authorities in Alabama and registering the vehicle in the names of Linda and Robert Scott Johnson. Alabama at that time did not require a valid certificate of title for registration of a motor vehicle. With an ostensibly good title in Alabama, the vehicle was registered in Wisconsin and later in Illinois.

and (4) the court "committed prejudicial error [by] imposing a ten (10) year prison term for a single offense".

### III. *Rule 103(c)*

■ Rule 103(c) of the Federal Rules of Evidence reads:

(c) Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury.

We agree with appellant that the trial court failed to comply properly with the requirements of this rule. At the beginning of the trial, the court informed counsel that it did not "have sidebars for any purpose". Consequently, all offers of proof were made in the presence of the jury. Although Rule 103(c) does not require the court to hold all proceedings pertaining to the admissibility of evidence outside the jury's presence, see *Charter v. Chleborad*, 551 F.2d 246, 249 n. 5 (8 Cir. 1977), an automatic "no sidebar" rule is contrary to the requirement that proceedings "be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury ...."[4]

■ We do not agree, however, with appellant's contention that the prosecutor took advantage of the court's no sidebar rule in order to suggest inadmissible evidence to the jury, and that this conduct deprived the appellant of a fair trial. Rule 103(a) provides that, "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected." Whether error is harmless or insubstantial must be "resolved in the context of the individual case". *International Merger & ACG Cons. v. Armac Enterprises*, 531 F.2d 821, 823 (7 Cir. 1976). The trial court's no sidebar rule cannot be the basis for reversible error if it "in no way influenced the jurors, or had only a slight effect on them". *Id.* After reviewing all of the instances where appellant claims that inadmissible evidence was suggested to the jury, we are satisfied that the jury could, at most, be only slightly affected. The prosecutor argued some of the evidential matters on foundation grounds.[5] Other arguments were rejected because the evidence was irrelevant, but the information revealed to the jury could have had only a minimal effect, taken either singly or cumulatively. Moreover, we find no instance where the conduct of the prosecutor rose to the level of prosecutorial misconduct.[6] We therefore hold that no reversible error occurred; nor was the appellant deprived of a fair trial.[7]

---

4. The Federal Rules of Evidence became effective on July 1, 1975. The Government cites cases decided before that date which hold that the trial judge has discretion to allow the jury to hear all arguments on the admissibility of evidence. Those cases are no longer in point.

5. For instance, the court sustained the appellant's objection to Government questions designed to show that the appellant's wife was involved in the fraudulent scheme. The Government then argued that the evidence was admissible on the ground that the appellant and his wife participated in a joint venture.

6. This court has considered questions involving the propriety of prosecutorial conduct in numerous cases. See, *e. g., United States v. Trutenko*, 490 F.2d 678 (7 Cir. 1973); *United States v. Spain*, 536 F.2d 170 (7 Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 96, 50 L.Ed.2d 97 (1976); *United States v. Castenada*, 555 F.2d 605 (7 Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 152, 54 L.Ed.2d 113 (1977); *United States v. Meeker*, 558 F.2d 387 (7 Cir. 1977); *United States v.*

*Falk*, 605 F.2d 1005 (7 Cir. 1979). In *Castenada* and *Falk*, this court noted that, "The Supreme Court has emphasized the difference between the 'ordinary trial error of a prosecutor' and 'egregious conduct' amounting to a denial of due process." (Citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974)) 555 F.2d at 610; 605 F.2d at 1011. The prosecutor's conduct in this case did not fall within any of the proscriptions of prior cases. He was forced to present his offers of proof within the hearing of the jury because of the trial judge's no sidebar rule.

7. Appellant also contends that the prosecutor's closing argument shows "subtle but . . . equally compelling . . . instances of trial misconduct". One alleged instance of prosecutorial misconduct involved remarks that Alabama should never have issued a registration to the appellant based on a "counterfeit Michigan title". Another pertained to a purported suggestion about a Jimmy Coleman, a friend of the appellant, who was originally named in the

## IV. Sufficiency of the Evidence

To prove mail fraud, the Government must prove that the mails were used "for the purpose of executing" the fraudulent scheme. 18 U.S.C. § 1341. Appellant argues that the Government's evidence is insufficient to prove this element in each of the three mail fraud counts.

### (1) Count I

Count I was predicated on the appellant's sending a letter by mail to Williamson, Foremost's claim adjuster, on July 13, 1976, listing items of equipment allegedly in his 1972 motor home. The Government relied on Williamson's testimony to establish the mailing. Appellant "deem[s] [Williamson's] testimony inherently improbable" because he had no personal knowledge of the mailings, but was merely expressing his opinion. He argues that the insufficiency of the evidence is amplified by the Government's failure to produce the envelope in which the equipment list was purportedly mailed.

 It is of course true that the introduction of the envelope in which the correspondence was mailed would have been strong direct evidence of mailings, but "testimony as to office practice is sufficient proof of mailing". *United States v. Joyce*, 499 F.2d 9, 15 (7 Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *United States v. Flaxman*, 495 F.2d 344, 349 (7 Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974). In *United States v. Shavin*, 287 F.2d 647, 652 (7 Cir. 1961), this court found "the evidence was sufficient to show that [a] letter was sent by United States mail" under circumstances similar to this case. The evidence in *Shavin*

disclosed that the letter "contained the initials of the defendant" and his secretary, indicating that "the letter was dictated by the defendant". It was addressed to an adjuster in the claim department of the insurance company. The proof further disclosed "that it was the custom of the [insurance company] to place a certain stamp on letters received through the mail and this letter was imprinted with this stamp".

Here, the equipment list, which forms the basis for establishing the use of the mails in Count I, was attached to an affidavit of loss signed by the appellant and notarized. The list also bears the appellant's name. This clearly supports the inference that appellant authored the documents. The equipment list, similar to the letter in *Shavin*, was addressed to the claims adjuster. The claims adjuster, Williamson, testified that he personally date stamped all correspondence he received through the mail, but did not date stamp correspondence received by other means.[8] The equipment list in question is date stamped "RECEIVED July 19, 1976". The claims adjuster also testified that he recalled viewing the envelope bearing the postage stamp in which the equipment list was mailed and that he was the only person that could have stamped it on July 19, 1976. This evidence supports the inference that the appellant sent the letter through the mails. The evidence is at least as strong as the evidence in *Shavin, supra*. Moreover, we see nothing "inherently improbable" in the adjuster's testimony that would merit interference by this court. He was not merely expressing an opinion or

indictment but who subsequently died. We see no evidence of prosecutorial misconduct in these remarks. A third alleged instance of misconduct was the prosecutor's attempt to submit into evidence an investigative file on the appellant apparently compiled by the insurance company, Foremost. The trial judge ruled the file inadmissible on the ground that it did not represent the best evidence. The jury did not see the file, whatever it contained. Moreover, the portion of the transcript submitted by the appellant shows no indication that inadmissible evidence came before the jury during arguments on the file's admissibility.

8. Williamson testified that on the average he received 10 to 15 letters through the mails per month and 40 to 50 hand delivered letters per month. Only the former were date stamped, and only he could have stamped them since no one else in the office opened or examined correspondence dealing with insurance claims. Williamson denied that the appellant could have hand delivered the equipment list, although he admits that the appellant visited his office.

conclusion.[9] His credibility appropriately is a matter for the jury.[10] *E. g., United States v. Grabiec,* 563 F.2d 313, 316 (7 Cir. 1977).

### (2) *Count II*

Count II was predicated on causing the mailing of a check in the amount of $10,695 from Foremost's main office to Williamson on October 27, 1976 to satisfy appellant's insurance claim. Appellant argues that, "Once again there is no envelope and there is nothing within the evidence at trial adducing sufficient trustworthy evidence that the check was ever mailed". He further contends that even if the evidence of mailing is adequate, the mailing was "far to [sic] abstract or remote to support any conviction". We find no merit in these contentions.

First, Williamson's testimony concerning his personal knowledge of the mailing and his knowledge of Foremost's business procedures is sufficient to establish the inference that Foremost mailed the check to Williamson. Williamson testified that after he received the affidavit of loss from the appellant, he mailed it to Foremost Insurance Company and that Foremost then mailed the check to him. He testified that, "On any drafts over a certain amount, they have to be sent from Indianapolis". The Government introduced the check into evidence. It sets forth the address of Foremost as Grand Rapids, Michigan and is drawn on Union Bank and Trust Company of that city. Williamson presented the check to the appellant and Pioneer Bank in Chicago on October 29, 1976.

Second, the mailing in question is not too remote to support a conviction. Ap-

pellant argues that he "could care less" how Williamson chose to process his claim. Although it is true that "the mailing must be 'for the purpose of executing the scheme as the statute requires'", *United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648, 38 L.Ed.2d 603 (1974) (quoting *Kahn v. United States,* 323 U.S. 88, 94, 65 S.Ct. 148, 151, 89 L.Ed. 89 (1944)), it is not necessary that the correspondence be mailed by the defendant. *E. g., United States v. Joyce,* 499 F.2d 9, 15 (7 Cir. 1974). "[O]ne 'causes the mails to be used where he does an act with knowledge that the use of mails will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended . . . .'" *Id.* (quoting *United States v. Maze,* 414 U.S. at 399, 94 S.Ct. at 648). Several cases have addressed circumstances similar to those presented here.

In *United States v. Calvert,* 523 F.2d 895 (8 Cir. 1975), *cert. denied,* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314 (1976), a defendant was convicted of mail fraud in connection with a scheme to take out accidental death insurance on a businessman and then to cause his death to collect the insurance proceeds. In response to a challenge that the evidence was insufficient to show the defendant caused the use of the mails to further this scheme, the court held that, "The jury could properly conclude from the evidence that the mailings . . . between the local [insurance] agents and the home offices were reasonably foreseeable". *Id.* at 903. The court cited *United States v. Minkin,* 504 F.2d 350, 353 (8 Cir. 1974), *cert. denied,* 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975), where the court upheld a jury determination that a mailing was reasonably foreseeable between a broker's

---

9. This distinguishes *Mackett v. United States,* 90 F.2d 462, 464 (7 Cir. 1937), heavily relied on by the appellant. In that case this court determined that the evidence was insufficient to establish mailing because, *inter alia,* the "testimony was merely the conclusion of the witness", and on cross-examination he contradicted himself.

10. The trial judge permitted appellant's counsel to voir dire Williamson concerning the receipt of the equipment list. Williamson admitted

that he received the list in question over two years prior to the trial and that on the average he received approximately 10 to 15 letters through the mail per month. This may have diminished his credibility concerning his personal recollection that he viewed the envelope in which the list and affidavit were sent, but even assuming *arguendo* that the jury did not believe that he remembered this, the other evidence sufficiently establishes the inference that the list was sent through the mail.

office and an insurance company twelve miles away, and *Bannister v. United States*, 379 F.2d 750, 752–753 (5 Cir. 1967), *cert. denied*, 390 U.S. 927, 88 S.Ct. 861, 19 L.Ed.2d 988 (1968), where the court held a mailing from a local insurance agent to his home office was reasonably foreseeable.

In *United States v. Britton*, 500 F.2d 1257 (8 Cir. 1974), the defendant was convicted of mail fraud in a scheme whereby he planned and staged a "fake" automobile accident and attempted to collect on a personal injury and property damage insurance policy. Four counts were based on the mailings by insurance companies of checks payable to him. In response to contentions that the "mails were not used for the purpose of executing the scheme in question" and "played no direct part in the furtherance of the scheme", the court held that the use of the mails was an integral element of the scheme to defraud because it allowed the defendant to realize the fruits of his plan and that it was "clear that . . . the fraud did not reach fruition until the checks were mailed to the perpetrator." *Id.* at 1259. The court concluded that "Regardless of the possibility of delivery by hand, the fact is that instruments essential to the consummation of the fraud, the false claims and misrepresentations relied upon by the insurance companies, were mailed, and the defendant could reasonably have foreseen that the mails would be used." *Id.; accord, United States v. Stull*, 521 F.2d 687 (6 Cir. 1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976) (the court ruled that it was immaterial that mailed checks could have been hand delivered or otherwise forwarded).

While this court has not previously considered a situation precisely in point, we have recognized the principles applied in the cases set forth above. In *United States v. Keane*, 522 F.2d 534, 552 (7 Cir. 1975), *cert. denied*, 424 U.S. 976, 96 S.Ct. 1481, 47 L.Ed.2d 746 (1976), we cited *Britton, supra*,

in ruling that "A mailing in furtherance of the collection of proceeds from a fraudulent scheme is sufficient under the mail fraud statute." *Accord, United States v. Rauhoff*, 525 F.2d 1170 (7 Cir. 1975); *United States v. Isaacs*, 493 F.2d 1124 (7 Cir.), *cert. denied*, 417 U.S. 976, 94 S.Ct. 3183, 41 L.Ed.2d 1146 (1974). In *United States v. Stanford*, 589 F.2d 285, 295 (7 Cir. 1978), *cert. denied*, 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), we recognized that it is immaterial that the defendant's fraudulent scheme to receive funds could be accomplished without the mails since "The use of the mails need not be an 'essential' element of the scheme"; that "The statute requires only that the mails be used 'for the purpose' of executing the scheme"; and that it is sufficient that the use of the mails "can reasonably be foreseen, even though not actually intended". We find these principles dispositive of the issues raised with respect to Count II.

### (3) *Count III*

Count III charges that the defendant caused a false Proof of Loss statement to be mailed to Foremost Insurance Company. The evidence is sufficient to show the mailing took place. The claims adjuster, Williamson, testified that he personally mailed the document to Foremost's Indianapolis office on October 29, 1976 after he had delivered the check for the insurance claim to the appellant and Pioneer Bank. Relying on *United States v. Maze, supra*, appellant argues that this mailing was too remote to form the basis of a conviction because it "involves documents sent to the insurance company after the monies were already received. . . ."

In *United States v. Rauhoff, supra*, this court recognized that "mailings made after the scheme has reached its fruition are not in furtherance of the scheme". 525 F.2d at 1176 (citing *Maze*).[11] The scheme here

---

11. In *Rauhoff*, however, we concluded that "it cannot be said . . . that mailings which occur subsequent to the fraudulent acts may never be in furtherance of the scheme." *Id.* at 1176. Mailings "made to promote the

scheme", or "which relate to the acceptance of the proceeds of the scheme", or "which facilitate concealment of the scheme" are exceptions to the general rule. Here the proceeds of the scheme had been accepted before the mail-

reached its fruition when Williamson delivered the check to appellant and Pioneer Bank in satisfaction of appellant's fraudulent claim. It is undisputed that Williamson did not mail the Proof of Loss until *after* the check was delivered. The conviction on Count III accordingly is reversed.

(4) *Variance or Amendment of Indictment*

■ Appellant notes that each count of the indictment involves mailing either to or from Dixie Highway, Chicago, Illinois, whereas in fact the mailings were made to or from Chicago Heights, a suburb of Chicago. He suggests that the proof of mailing accordingly "either fatally varied from the indictment or tended to act as an amendment to the indictment". He submits further that this created a venue problem. We find no merit in either contention. The variance is not fatal since the indictment sufficiently sets forth the elements of the offense, apprises the defendant of what he must be prepared to meet, and protects him against double jeopardy. See *Hagner v. United States*, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932). With respect to venue, any variance is immaterial since both locations are within the same judicial district. Article III, § 2 of the Constitution requires criminal trials to "be held in the State where said crimes shall have been committed" and the Sixth Amendment states the trial must be in "the State and district wherein the crime shall have been committed".

## V. *Instruction Conference*

■ Appellant contends that the "spirit" of Rule 30 [12] of the Federal Rules of Criminal Procedure was violated by the court's failure to hold an instruction conference prior to charging the jury. The record shows that by June 28, 1979, eight days prior to the charging of the jury, both parties had tendered copies of their proposed instructions to the court and had also provided their adversary with copies. At a conference in the jury's absence on July 3, 1979, two days prior to charging the jury, the court announced which instructions would be given. Both counsel were given an opportunity to present additional instructions or to revise those already submitted.

Appellant argues that the only opportunity he had to review the instructions and to object to them was during the short meeting on July 3, when the court announced which instructions would be given. He admits, however, that he did not request an additional conference and that "In candor [he is] without the ability to point out any instructions that were clearly objectionable."

Appellant's contentions are without merit for two reasons. First, the record shows the appellant had six days to review the Government's instructions and to object thereto when the court announced on July 3, 1979 which instructions would be given. Second, even assuming, *arguendo*, a violation occurred, a failure to hold an "instruction objection" conference is not reversible error unless prejudice is shown. *Hamling v. United States*, 418 U.S. 87, 135, 94 S.Ct. 2887, 2916, 41 L.Ed.2d 590 (1974). Here, none of the appellant's instructions were refused in their entirety and the appellant admits that he cannot now identify any

ing. The transaction between appellant and Foremost was complete when Foremost's agent delivered the check and received the proof of loss. This is not a case where defendant made a mailing in accepting the check.

**12.** Rule 30 provides:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury.

instructions "that were clearly objectionable". He has failed to show prejudice.

## VI. *Sentencing*

Appellant contends that his convictions on multiple counts constituted improper merger and double jeopardy and that the ten years total imprisonment is excessive. He argues that the fraudulent scheme constituted one transaction and could not be separated into three counts of mail fraud and one count of bank fraud.

First, it is well settled that "each mailing in furtherance of a scheme to defraud is a separate offense under 18 U.S.C. § 1341 even if there is but one scheme involved." *United States v. Weatherspoon*, 581 F.2d 595, 602 (7 Cir. 1978). See also *United States v. Badders*, 240 U.S. 391, 36 S.Ct. 367, 60 L.Ed. 706 (1916); *United States v. Joyce, supra*, 499 F.2d at 19. Ledesma was properly charged in separate counts of mail fraud.

Second, it is also clear that the Government could properly charge appellant separately with mail fraud and giving a false statement to obtain a bank loan. The violation of the bank fraud statute was complete when the appellant obtained the loan from Pioneer Bank by making a false statement. Thus, even assuming, *arguendo*, that the appellant never made a false insurance claim, he still could have been charged for this offense. Moreover, in *Weatherspoon, supra* at 599, this court noted "that the mail fraud statute has long been used in concert with statutes proscribing the making of false statements to a government agency, and no question has heretofore been raised as to the propriety of doing so as far as we know." We concluded that "the mail fraud statute proscribes different conduct and requires proof of different elements than the false statements statute,

and Congress has a right to authorize additional sanctions for abuse of the mails in connection with a scheme to defraud ... even though the fraud may be separately punished under another federal statute."

Finally, appellant argues that the sentence is excessive since it arose out of a single scheme. As this court stated in *United States v. Willard*, 445 F.2d 814, 816 (7 Cir. 1971):

It is well established that sentencing judges have a wide discretion in determining the appropriate punishment within the limits of various federal statutes and that as a matter of the appellate court's supervisory control, the exercise of such discretion will not be disturbed on appeal except on a plain showing of gross abuse.

*Accord, United States v. Rauhoff, supra* 525 F.2d at 1178–1179; *United States v. Cardi*, 519 F.2d 309 (7 Cir. 1975).[13] The sentences imposed were well within the statutory limits. We find no abuse of discretion by the trial court.

The convictions on Counts I, II, and IV are affirmed. The conviction on Count III is reversed, and the case is remanded for modification of the judgment in accordance with this opinion.

---

**13.** Appellant's reliance on *United States v. Mackay*, 491 F.2d 616 (10 Cir. 1973), *cert. denied*, 419 U.S. 1047, 95 S.Ct. 619, 42 L.Ed.2d 640 (1974), is misplaced. In that case the defendants were given 15 consecutive one-year sentences plus substantial fines for a single fraudulent scheme involving multiple mailings. The court noted that it had "repeatedly held that so long as the sentence is valid, that is, does not exceed maximum limits, it is not illegally excessive". The court declined to review the sentence and affirmed the convictions, but suggested that there was "an avenue open to the defendant, pursuant to Rule 35 of the Federal Rules of Criminal Procedure for a reconsideration of the sentence."