**RADIONIC INDUSTRIES, INC., Plaintiff,**

v.

**GTE PRODUCTS CORPORATION, et al., Defendants.**

No. 86 C 3808.

United States District Court, N.D. Illinois, E.D.

April 7, 1987.

James R. Levin, P.C., Chicago, Ill., for plaintiff.

Gary Senner, Philip A. O'Connell, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This action is brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and state law claims, based on both pendent and diversity jurisdiction, of fraud, negligent misrepresentation, and breach of express and implied warranty. Defendant GTE Products Corporation ("GTE") has moved to dismiss the two RICO counts and the fraud and negligent misrepresentation claims.

### FACTS

Radionic makes lighting ballasts. Beginning in September, 1981, it turned to GTE to provide a supply of "glo bulbs," a critical component of the ballasts. This relationship continued amicably for over two years until, unbeknownst to the plaintiff, GTE changed the makeup of the glo bulbs. As a result of this change—which occurred sometime prior to the summer of 1984—over fifty percent of Radionic's ballasts failed to operate. When initially confronted, GTE (and "one or more" of the presently unknown individual defendants) denied that the glo bulb's specifications had been altered. That admission finally came on October 8, 1984, after repeated inquiries from Radionic.[1] By then, Radionic had suffered $100,000 in damages.

### DISCUSSION

#### I. The RICO Counts

In an effort to bring this suit under the RICO statute, Radionic alleges various acts of mail and wire fraud. These include the mailing of invoices for the glo bulbs, "repeated" interstate telephone communications (only one of which is pled with any specificity), and a May 1, 1986, letter from GTE's general counsel denying that there were changes in the specifications of the bulbs. The defendant asserts, *inter alia*, that these predicate acts do not constitute a "pattern of racketeering" as contemplated by the statute and challenges the legal sufficiency of the predicate acts.

#### A. Predicate Acts

As I see it, Radionic's RICO counts stand on three legs, each of which is composed of predicate offenses necessary to bring the RICO statute into play. They are: (1) communications between Radionic and GTE occurring after October 8, 1984; (2) invoices mailed to Radionic by GTE to reflect the number of glo bulbs purchased and shipped; and (3) telephone conversations prior to October 8, 1984, in which GTE denied changing the specifications of its bulbs to the plaintiff. As is apparent, each leg is based on the mail and wire fraud provisions of the United States Code.

Those sections prohibit the use of the mails or telephone lines "for the purpose of executing" "any scheme or artifice to defraud ... or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. §§ 1341, 1343. In *United States v. Maze*, 414 U.S. 395, 401–402, 94 S.Ct. 645, 649, 38 L.Ed.2d 603 (1974), the Supreme Court held that a mailing made after a scheme has reached its fruition does not further the scheme and thus is too remote to support a conviction under the mail fraud statute. *See United States v. Ledesma*, 632 F.2d 670, 677–78 (7th Cir.1980), *cert. denied*, 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980).

This construction of the statute renders insufficient the "predicate" acts which transpired in 1986. According to the complaint, Radionic learned that GTE had critically changed the composition or manufacturing of the glo bulbs in October, 1984, and apparently stopped purchasing the GTE product sometime prior to that date. See § 19 & Ex. A (invoices dated 5/31/84 to 8/14/84). Even assuming the scheme to be of a continuing nature, that it reached

---

1. According to plaintiff's memorandum, the admission was made by GTE's chief engineer. See pl. mem. in opposition to motion to dismiss, at p. 2.

"fruition" when Radionic discovered the fraud cannot reasonably be disputed.[2] As a result, it would seem that the August 5, 1986, telephone call between Radionic and GTE and the May 1, 1986, letter from GTE's general counsel do not fall under the mail and wire fraud statutes and cannot, therefore, constitute predicate offenses under RICO.[3] *See* complaint at ¶¶ 27(b), 28(b).

■ Radionic contends that the court should refrain from reaching this conclusion for two reasons. The first asserts that GTE's denial of the October, 1984, admission (see answer, at ¶ 19) should preclude it from asserting plaintiff's knowledge as a defense. Pl. mem. at 5. That is simply wrong. The purpose of a motion to dismiss is to test the sufficiency of the complaint based solely—as plaintiff's memorandum correctly notes—on its own facts. See pl. mem. at 3.

Radionic's second reason is equally misguided. It argues that

Regardless of when committed, all acts pursuant to the scheme are part of the actionable wrong.... It is not necessary that Radionic relied on such fraudulent statement[s], it is only necessary that the participants committed an act pursuant to the scheme.... This Court is not to judge the effectiveness of each wrongful act and exonerate the defendants for wrongful acts which turn out not to have been very effective in achieving the wrongful purpose.

Pl. mem. at 5. As stated, there is nothing objectionable with this assessment; as applied to the facts alleged in the complaint, however, the statement begs the question. The fact that the 1986 communications came over a year after Radionic discontinued GTE as a supplier means that they are too remote to constitute actionable mail

fraud; the fact that Radionic knew of the changed makeup of the bulbs in 1984 precludes deeming them as actionable fraud. *See Soules v. General Motors Corp.*, 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E.2d 599 (1980) (fraud requires a showing of *reliance on the truth* of the statement giving rise to the claim).

The complaint does not suggest that the 1986 communications "were designed to lull the victim[ ] into a false sense of security, postpone [its] ultimate complaint to authorities, ... [or] make the apprehension of the defendants less likely...." *Maze*, 414 U.S. at 403, 94 S.Ct. at 650. In the absence of such factual allegations, this court must hold that these statements do not constitute predicate offenses under the RICO statute.[4]

■ This holding leaves Radionic's RICO claims standing on two remaining legs, one of which also gives plaintiff no support. The complaint alleges, as predicate acts, "repeated interstate telephone communications during which employees of GTE falsely denied that GTE was using the Changed Processes." ¶ 28(a). GTE contends, correctly, that this statement, without more (and there is no more), fails to meet the pleading requirements of Fed.R.Civ.P. 9(b). In the context of a mail fraud case, the plaintiff must, to satisfy the somewhat stricter pleading standards of Rule 9(b), "sketch out *who* (i.e., which defendant) caused *what* to be mailed *when*, and *how* that mailing furthered the fraudulent scheme." *Ghouth v. Conticommodity Services, Inc.*, 642 F.Supp. 1325, 1331–32 (N.D.Ill.1986). The same standards, which have not been met here, apply to wire fraud allegations. Accordingly, the RICO claims cannot stand on these predicate acts.

The final leg of the RICO counts involves the mailing of invoices for the glo bulbs.

---

2. Although there are exceptions to this rule, *see Ledesma*, 632 F.2d at 677, n. 11, the complaint does not state, nor does the plaintiff suggest, how any of these exceptions might be involved in this case.

3. Given this holding, I need not address whether a letter written by an attorney in anticipation of litigation can constitute an act of mail fraud. But see *Spiegel v. Continental Illinois Nat'l Bank*,

609 F.Supp. 1083, 1086–90 (N.D.Ill.1985), *aff'd*, 790 F.2d 638 (7th Cir.1986) (arguing that it can not).

4. The logic of this ruling, of course, applies to any communications between GTE and Radionic after October 8, 1984—not just the 1986 communications.

GTE argues, citing this court's opinion in *Edward George Co. v. Buck Stoves Northwest Inc.*, No. 85 C 10548, slip op. at 4–5 (N.D.Ill. May 8, 1986) [Available on WESTLAW, DCT database], that the complaint fails to explain how the posting of these invoices were "in furtherance of" a scheme to defraud. It also asserts that the shipping papers, which "merely provide a convenient record of debts already incurred," could not be in furtherance of such a scheme.

■ The citation to *Edward George* is inapposite. That opinion does not suggest that invoices cannot constitute mailings subject to the mail fraud act. Rather, the decision was based on the failure of the plaintiff there to plead "a pattern of racketeering." Given the lack of particularity with which the predicate acts there (the invoice mailings) were alleged, I held that I could not determine from the complaint whether a proper RICO claim could be proven. Here, in contrast, Radionic has alleged, through its attachment to the complaint, four separate mailings by GTE. Given the continuing nature of the fraud alleged, these mailings can reasonably be deemed to be "in furtherance of" that fraud. I hold, therefore, that the complaint adequately alleges four separate acts of mail fraud. Whether these constitute a "pattern of racketeering," however, is an entirely different matter.

## B. Pattern Problems.

In a recent opinion discussing the RICO pattern requirement in the context of a motion to dismiss, I set forth the current test in this circuit for determining what constitutes a pattern. *Levit v. Brodner*, No. 85 C 7196, slip op. at 3–9 (N.D.Ill. Feb. 25, 1987) [Available on WESTLAW, DCT database]. There, I stated:

In *Sedima, S.P.R.L. v. Imrex* [473 U.S. 479], 105 S.Ct. 3275, 3285 n. 14 [87 L.Ed.2d 346], the Supreme Court read the pattern requirement as demanding some kind of "continuity plus relationship" between the predicate offenses. In an attempt to give content to the Court's insight, the Court of Appeals has stated

that the continuity prong of *Sedima*, which targets ongoing criminal behavior, requires proof of predicate acts that "can fairly be reviewed as constituting separate transactions, i.e., 'transactions somewhat separated in time and place.'" *Morgan v. Bank of Waukegan*, 804 F.2d 970, 975 (7th Cir.1986), quoting *Graham v. Slaughter*, 624 F.Supp. 222, 225 (N.D. Ill.1985).

*Morgan* concluded that, for purposes of application of these principles, "a factually-oriented standard, not a set rule, best meets the Supreme Court's directive." *Id.* at 977. The relevant factors in determining continuity, the *Morgan* court observed, include the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Id.* at 975.

*Levit*, slip op. at 3–4 (footnote omitted).

Application of this standard to the facts alleged in the complaint demonstrates the absence of a pattern in this case. The four predicate acts surviving GTE's motion to dismiss, the mailing of the invoices attached to the complaint, occurred over a period of less than three months. Indeed, the scheme as a whole, which began prior to the summer of 1984 and ended in October of that year, lasted only five or six months. In addition, the complaint only alleges one victim and one scheme.

In this respect, this case is very much like *Lipin Enterprises v. Lee*, 803 F.2d 322 (7th Cir.1986). There, the buyer of an auto leasing company alleged that other parties participating in the sale each made fraudulent representations as to the value and assets of the company. Noting that the alleged racketeering acts were "all designed to defraud one victim ... on one occasion," the *Lipin* court found the twelve acts of mail fraud detailed in the complaint insufficient to constitute a pattern of racketeering activity. 803 F.2d at 324.

In response to this, Radionic might argue (although it does not) that, as in *Illinois Department of Revenue v. Phillips*, 771

F.2d 312 (7th Cir.1985), each of the invoices constituted distinct injuries. In *Phillips*, the defendant mailed nine fraudulent monthly sales tax returns to the state. The Court of Appeals found this conduct within RICO's reach because, as explained later in its *Morgan* opinion, "each tax return was a separate lie and resulted in a separate underpayment, independent of the other lies and underpayments." *Morgan*, 804 F.2d at 976.

What distinguishes *Phillips* from this case, however, is that here only one decision to defraud was made: the secretive change in the makeup of the glo bulb. In *Phillips*, each mailing was both a separate crime (tax and mail fraud) and a truly separate *act;* here, in contrast, the predicate acts alleged "relate to but a single act." *Morgan*, at 976. See also *Heritage Ins. Co. v. First Nat. Bank of Cicero*, 629 F.Supp. 1412 (N.D.Ill.1986) (Getzendanner, J.) (If the fraud were viewed as a "single decision" to misappropriate funds, there would probably be no pattern). Count I of the complaint is therefore dismissed for failure to allege a pattern of racketeering activity. Count II, which attempts to state a claim under the conspiracy section of the RICO act, is dismissed for the same reason. See *United States v. Neopolitan*, 791 F.2d 489, 494–500 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 422, 93 L.Ed.2d 372 and *Messino v. United States*, —— U.S. ——, 107 S.Ct. 421, 93 L.Ed.2d 371 (1986) (defendant who does not agree to commission of crimes constituting a pattern of racketeering activity does not violate 18 U.S.C. § 1962(d)).

■ Because this decision leaves no federal questions remaining in this lawsuit, the "John Doe" defendants are also dismissed. John Doe practice is unwarranted in diversity cases because the citizenship of the unknown persons—upon which the court's jurisdiction rests—cannot be known. *See Moore's Federal Practice* ¶ 8.10 at p. 8–45 (1986). Absent specific allegations of citizenship attributed to particular John Doe defendants, the court cannot entertain the action against the individual defendants.

### C. Enterprise.

GTE asserts that the complaint's allegation of a RICO enterprise is deficient as a matter of law. Although not necessary, given my holding above, to the resolution of this motion, the court will address the question so as to aid the plaintiff in redrafting its complaint, should it decide to do so.

Webster's defines "enterprise" as "a unit of economic organization or activity." Webster's Third New International Dictionary 757 (1976) (definition 1c). To achieve a similar meaning, Congress has defined the same word to "include[ ] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961. Despite the simplicity of the former, it is the latter definition which forms the basis of RICO's enterprise requirement.

RICO—which stands for "racketeer influenced and corrupt organizations"—was designed to strike at the use of illegal methods to infiltrate and gain control of legitimate businesses and to unmask illegal operations cloaked with legitimacy. Given this breadth of purpose, it has widely been recognized that an "enterprise" under the act may "play the various roles of victim, prize, instrument, or perpetrator." *Haroco v. American National Bank & Trust Co.*, 747 F.2d 384, 401 (7th Cir.1984), *aff'd,* —— U.S. ——, 105 S.Ct. 3292, 87 L.Ed.2d 361 (1985), citing Blakely, The Civil Rico Fraud Action in Context, 58 Notre Dame Law. 237 (1982). The liability under RICO of the enterprise itself, the *Haroco* court observed, is properly dependent on the role it played in the criminal scheme. *Id.*, 747 F.2d at 401.

More specifically, *Haroco* held that the language of § 1962's subsections, which enumerate prohibited conduct under the act, determines the circumstances under which an organization may be both the "enterprise" bringing the statute into play

**628**

and a liable defendant.[5] As the court of appeals observed, those circumstances are spelled out in § 1962(a):

> As we parse subsection (a), a "person" (such as a corporation-enterprise) acts unlawfully if it receives income derived directly or indirectly from a pattern of racketeering activity in which the person has participated as a principle ... and if the person uses the income in the establishment or *operation* of an enterprise affecting commerce.... This approach to subsection (a) thus makes the corporation-enterprise liable under RICO when the corporation is actually the direct or indirect beneficiary of the pattern of racketeering activity, but not when it is merely the victim, prize, or passive instrument of racketeering.

747 F.2d at 402 (emphasis in original).

Section 1962(c), the *Haroco* Court implied by way of contrast, was fashioned for just those other situations in which the enterprise was merely the victim or instrument of others misdoings. Its "employed by or associated with" language, the Court reasoned, precluded liability based on an entity's conduct of its own business. The provision, rather, "requires separate entities as the liable person and the enterprise which has its affairs conducted through a pattern of racketeering activity." *Haroco,* 747 F.2d at 400.

This holding was recently reaffirmed in *McCullough v. Suter,* 757 F.2d 142 (7th Cir.1985). There, the Court held that, under § 1962(c), a sole proprietorship may be an enterprise with which its proprietor, the liable person, is associated if there is "some separate and distinct existence for the person [the proprietor] and the enterprise [the proprietorship]." *Id.,* at 144, quoting *Haroco,* 747 F.2d at 402. As the Court explained, a "one-man band that does not incorporate, that merely operates as a proprietorship, gains no legal protections from the form in which it has chosen to do business; the man and the proprietorship really are the same entity in law and fact." *McCullough,* 757 F.2d at 144. When the proprietor employs others in or incorporates the business, however, the enterprise becomes practically or formally distinct from its conductor, who may now be liable under § 1962.

In this case, Radionic claims to meet the RICO enterprise requirement by alternately pleading two entities. See complaint, ¶ 24. One entity is GTE itself; the second is an "association in fact" made up of GTE and the individual defendants, all of whom are employed by or a part of the company. See *id.,* ¶ 7. Based on the interpretation of § 1962 spelled out in *Haroco* and *McCullough,* I find that both these enterprises are deficient as a matter of law, and taken together, independently justify this court's dismissal of the RICO count as to GTE.

■ With respect to the first enterprise, this judgment is arrived at especially easily. *Haroco* specifically held that a corporation cannot be both a liable person and the enterprise under § 1962(c). Here, GTE is named in a § 1962(c) claim as both a defendant and the enterprise. The conclusion is too obvious even to state. The plaintiff appears to realize this fact and concentrates its efforts on its "association in fact" theory. See pl. mem. at 8–11.

That theory—which recasts a corporation as an "association in fact" of itself and its employees—is essentially a linguistic maneuver designed to slip around the *Haroco* decision and pin vicarious liability on a deep pocket under § 1962(c). I have already

---

Section 1962(a) provides in pertinent part that

[i]t shall be unlawful for any person who has received any income derived, directly or indirectly from a pattern of racketeering activity ... in which such person has participated as a principal ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

Section 1962(c) provides that

[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

expressed my distaste for this argument and the Court of Appeals, as I read *Haroco*, has done the same. See *Haroco*, 747 F.2d at 401 ("it is not obvious that the problem can be resolved by merely alleging that the corporation and its employees constitute an association in fact"); *On/TV of Chicago v. McGough*, No. 84 C 2122, slip op. at 5–6 (N.D.Ill. Feb. 12, 1985) (Getzendanner, J.) ("The court rejects this attempt to recast Associates as an association in fact of Associates, its owner/operator, and its employees. At most, this combination should be viewed simply as Associates.").

█ The reason this theory fails as a matter of law, as Judge Hart has recently pointed out, is that the legal concept of a corporation includes its employees and officers. *Executive Office Complex I v. Dwinn-Shaffer & Co.*, No. 86 C 759 (N.D. Ill. May 30, 1986) (Hart, J.) [Available on WESTLAW, DCT database]; *Greenberg v. Technicare Corp*, No. 85 C 5436 (N.D.Ill. Jan. 2, 1987) (Hart, J.) [Available on WESTLAW, DCT database]. To speak of a corporation "associating with" an "association in fact" of itself and its workers is to venture onto the very path which *Haroco* closed: a corporation cannot associate with itself for purposes of § 1962(c) liability. Accordingly, I hold that a corporation cannot be liable as a "person" under § 1962(c) where the enterprise alleged is composed exclusively of an association in fact between the corporation and its officers and employees. *Accord: Executive Office Complex I, supra,* (Hart, J.); *Greenberg, supra,* (Hart, J.); *American Bonded Warehouse Corp. v. Compagnie Nationale Air France*, No. 86 C 4780 (N.D.Ill. Feb. 17, 1987) (Bua, J.) (to be reported at 653 F.Supp. 861); *McCarthy v. Painewebber, Inc.*, No. 85 C 3328 (N.D.Ill. April 11, 1985) (Shadur, J.). *Contra: Barr v. Illinois Co. Inc.*, No. 84 C 2076 (N.D.Ill. Jan. 16, 1986) (Nordberg, J.) [Available on WESTLAW, DCT database] (allowing, as a legal matter, an association in fact enterprise between a corporation and its employee where corporation was also a defendant in § 1962(c) matter, but finding complaint factually insufficient to support claim). Cf. *Rockwell Graphic Systems, Inc. v. DEV*

*Industries, Inc.*, No. 84 C 6746 (N.D.Ill. Feb. 17, 1987 (McGarr, J.) [Available on WESTLAW, DCT database] (association in fact composed of *two* companies and some of their employees).

## II. *Common Law Fraud*

█ GTE argues that Count III of the complaint must be dismissed as it fails to allege reasonable reliance or to plead fraud with particularity. With respect to the first issue, GTE's point that Radionic could not have reasonably relied on the 1986 communications is correct. That fact, however, does not preclude the plaintiff from showing reliance on GTE's statements prior to October, 1984. See ¶¶ 13, 14, 17, 18.

GTE's motion to dismiss for lack of particularity must also be denied. In *McKee v. Pope Ballard Shepard & Fowle, Ltd.*, 604 F.Supp. 927, 930 (N.D.Ill.1985), I observed that, under Rule 9(b), a complaint alleging fraud should include the identity of the person making the misrepresentations, the content of the misrepresentations, and how the misrepresentations were communicated to plaintiff.

█ In this case, the plaintiff has met this burden of pleading. The complaint alleges that GTE made false statements to Radionic when GTE denied having changed the makeup of its bulbs. Complaint at ¶ 17. The complaint does not state exactly how these representations were communicated to the plaintiff, but it does allege that they were made in response to Radionic's inquiries during the summer of 1984. See *id.* at ¶¶ 15–17. Because this level of detail gives the defendant notice of the charges against it and satisfies the policies behind the rule, I will not dismiss the common law fraud count for lack of particularity.

## III. *Negligent Misrepresentation.*

In its recent opinion in *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986), the Illinois Supreme Court reaffirmed its earlier ruling in *Moorman Mfg. Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982),

holding that, in the absence of personal or physical harm to property, a party may not recover "economic loss" under strict liability or negligent misrepresentation theories. The *Moorman* court defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits...." *Moorman*, 61 Ill.Dec. at 753, 435 N.E.2d at 449 (citations omitted).

The plaintiff seems to acknowledge that, under the general rule of *Moorman*, it cannot maintain a claim in tort under the facts alleged in its complaint. It turns, therefore, to an exception carved out by the *Moorman* court permitting an action "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman*, 61 Ill.Dec. at 755, 435 N.E.2d at 452, citing *Ronzy v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969). *See also Anderson Electric, Inc.*, 104 Ill.Dec. at 690, 503 N.E.2d 247 (reaffirming *Moorman's* narrow reading of the negligent misrepresentation tort).

Applied to the facts alleged in the complaint, Radionic's suggestion that GTE falls into this category is frivolous. In this respect, it is identical to a claim which Judge Shadur dismissed as "frankly appalling" given the "clear and unambiguous" law respecting the negligent misrepresentation exception. *National Union Fire Ins. Co. v. Continental Illinois Corp.*, 654 F.Supp. 316, 318 (N.D.Ill.1987). There, the plaintiff attempted to widen the exception to reach the Continental Illinois Corporation because of misrepresentations made to the plaintiff in the course of Continental's purchase of insurance from plaintiff. In dismissing the claim, the court stated:

> There is no way in which Continental ... can conceivably be characterized as "in the business of supplying information for the guidance of others in their business transactions" *Anderson*, 115 Ill.2d at 153, 104 Ill.Dec. at 692, 503 N.E.2d at 249, quoting *Moorman* ). If the [claim] is accepted as true, Continental (a bank holding company) made the alleged misrepresentations in the course of its business, but its business was *not* itself the

supplying of information. That is fatal to Insurers' negligent misrepresentation claim, and their counsel know it. *Id.*

I believe Judge Shadur's statement captures the essential flaw in Count IV of the complaint here. The GTE division involved in this action is not in the business of supplying information; it sells light bulbs. Indeed, the plaintiff's complaint states as much. See complaint, ¶ 9. That pleading makes completely clear what this case is about. GTE is alleged to have breached warranties and, perhaps to disguise the breach, committed fraud. It is not about, and cannot reasonably be construed as being about, the "sale" of information to Radionic. The tort claim is dismissed.

## CONCLUSION

For the reasons stated above, Counts I and II, the RICO counts are dismissed for failure to adequately plead a "pattern of racketeering activity." Count III remains in the case; however, because the court is unable to determine the citizenship of the John Doe defendants, they are dismissed from the remaining diversity action. Finally, Count IV is dismissed because it fails to state a claim upon which relief can be granted under Illinois law.

It is so ordered.