**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Nathaniel BROOKS,
Defendant-Appellant.**

No. 84–1337.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1984.

Decided Dec. 3, 1984.

Rehearing Denied Jan. 3, 1985.

---

Scott King, Asst. U.S. Atty., R. Lawrence Steele, Jr., U.S. Atty., John F. Hoehner, Asst. U.S. Atty., Hammond, Ind., for plaintiff-appellee.

Itsia D. Rivera, East Chicago, Ind., for defendant-appellant.

Before CUMMINGS, Chief Judge, and POSNER and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from a conviction following a bench trial in which the defendant was found guilty on two counts of mail fraud. The defendant argues that there was insufficient evidence produced at trial to prove beyond a reasonable doubt that he used or caused someone to use the United States mails pursuant to a scheme to defraud his insurance company. For the reasons stated below, we reverse the conviction on both counts.

## I.

In May 1979, defendant Nathaniel Brooks obtained car insurance with the Dairyland Insurance Company through an independent insurance agent, Gary Greenbaum, in Merrillville, Indiana. The expiration date on the policy was February 25, 1980. On February 20, 1980, Brooks reported to the Michigan City, Indiana police department that his 1977 Mercury had been stolen. Brooks also notified his insurance agent about the alleged theft loss. Greenbaum proceeded to complete a theft report form and sent this form with a copy of the police report to Sentry Insurance, the owner of Dairyland Insurance, in Lansing, Michigan.

Following receipt of the theft report form, Sentry notified the National Automobile Theft Bureau ("NATB") of the alleged theft and sent a letter to Brooks on February 26, 1980, which explained the procedure

to be followed in making a theft claim.[1] Shortly after sending this letter, Sentry sent a report of theft loss form (Government Exhibit 4) to Brooks. A claims examiner with Sentry, Taffy Grometer, testified that Sentry received the completed theft loss form on March 13, 1980, in the United States mail. Tr. I at 34. When questioned as to how she knew that the form was received in the mail, Grometer explained that she knew this fact because the form was date-stamped by the claims clerical department. Tr. I at 34, 41. This testimony was corroborated by Phillip Dimitrijevic, the Sentry claims examiner assigned to Brooks' claim, who stated that he knew the theft loss form was returned by United States mail because it was date-stamped when it was received by the company's mail department. Tr. I at 51.

In response to notification by Sentry, NATB mailed an owner's report of stolen vehicle form to Brooks on March 5, 1980, in order to obtain more information on the alleged theft. An assistant manager for NATB's Western Division, Michael Buchanan, testified that NATB received the completed form (Government Exhibit 9) on March 10, 1980, in the United States mails. Buchanan indicated that it was NATB's usual business practice to mail this form to a theft victim and that in the normal course of business, these forms would be returned in the United States mails. Tr. I at 118–20.

On March 25, 1980, Sentry issued a claim check payable to Nathaniel Brooks and Ford Motor Credit Company, the first lienholder, for $3,900. The check was applied to Ford Motor Credit's loan to Brooks, with Brooks paying to Ford Motor Credit the remaining balance of $417. Brooks re-

placed his 1977 Mercury with a 1975 Mercury.

Approximately two years after the alleged theft, a patrolman with the Lake County, Indiana police department spotted Brooks driving a 1977 Mercury matching the description of the stolen car. When he could not locate the Federal Environmental Protection Agency sticker containing the car's vehicle identification number, the patrolman suspected that the car might have been retagged and ordered it impounded. A subsequent investigation revealed that the car had been retagged by replacing the dashboard from the 1977 Mercury with the dashboard from the 1975 Mercury.

In an interview with United States Postal Inspector Fred Flynn and NATB manager Buchanan on April 8, 1983, Brooks admitted that the vehicle stopped by the Lake County patrolman was the same car that he had reported stolen in 1980.[2] Brooks explained that he had observed an unknown male driving the 1977 Mercury several weeks before he was stopped by the patrolman. Brooks pulled the driver over and, after an argument, allowed the driver to remove his personal belongings and the vehicle's dashboard. Brooks proceeded to place the 1975 Mercury dashboard in the 1977 Mercury.[3]

Following this investigation, Brooks was indicted and charged with five counts of mail fraud on November 10, 1983, pursuant to 18 U.S.C. § 1341 (1982). Brooks was found not guilty on Counts I, II, and IV, which involved mailings from the insurance agent, insurance company, and NATB to either the company or Brooks. Brooks was found guilty on Count III for the theft

1. The letter from Phillip Dimitrijevic, a claims examiner with the insurance company, stated that Brooks would "be receiving a theft report form in the mail which [he] should fill out to the best of [his] ability and return to [Dairyland's Lansing, Michigan] office along with a photo of the vehicle if [he had] one." Government Exhibit 3; Tr. I at 47–49. The letter did not specify the means by which it should be returned to the insurance company.

2. Prior to the interview, Inspector Flynn read the standard warning and waiver of rights form

to Brooks, who stated that he understood his rights and signed the form. Tr. I at 100.

3. In the interview, Brooks stated that he did not contact the police department following his recovery of the 1977 Mercury because he did not want to get anyone in trouble. Tr. I at 130. Brooks also said that he did not notify the insurance company because he wanted to wait until he had gathered enough money to pay off the debt owed to the company. *Id.* at 153.

report form that Brooks mailed back to Sentry and on Count V for the owner's report of stolen vehicle form that Brooks mailed back to NATB. Brooks was sentenced to one year and four years probation and was ordered to make restitution of $1,400 to the insurance company.

■ On appeal, Brooks claims that the government offered insufficient evidence to prove that he used the United States mails on two occasions to transmit false theft reports to his insurance carrier and the NATB.[4] Brooks argues that because the government's witnesses could not definitively establish that the forms had been sent by United States mail rather than by a private mailing service, his conviction should be reversed.[5]

## II.

■ In order to convict an individual of mail fraud under 18 U.S.C. § 1341 (1982),[6] the prosecution must establish beyond a reasonable doubt that: (1) the defendant has participated in a scheme to defraud and (2) the defendant has mailed or has knowingly caused another to mail a letter or other matter for the purpose of executing the scheme. *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435

(1954); *United States v. Clark*, 649 F.2d 534, 540 (7th Cir.1981). The mail fraud statute was not intended to reach all frauds, but only those involving the use of the mails, which is the gist or corpus of the crime. *Kann v. United States*, 323 U.S. 88, 95, 65 S.Ct. 148, 151, 89 L.Ed. 88 (1944); *Mackett v. United States*, 90 F.2d 462, 464 (7th Cir.1937). When the defendant questions the sufficiency of the evidence underlying his criminal conviction, it is a well-established principle of federal law that the appellate court will view the facts in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Clark*, 649 F.2d at 537. Upon a challenge to the sufficiency of the evidence, the standard of review is whether a rational trier of fact could have found from the evidence and inferences drawn therefrom that the defendant was guilty beyond a reasonable doubt. *United States v. Roya*, 574 F.2d 386, 394 (7th Cir.), *cert. denied*, 439 U.S. 857, 99 S.Ct. 172, 58 L.Ed.2d 165 (1978).

■ The use of the mails element of mail fraud may be proved by direct or circumstantial evidence. *Whealton v. United States*, 113 F.2d 710, 713 (3d Cir.1940). The introduction of the envelope in which

---

4. During oral argument, counsel for the defendant admitted that she did not dispute at trial the sufficiency of the evidence as to the use of the United States mails, but rather focused on the existence of a fraudulent scheme. At the close of the government's case and at the close of all the evidence, counsel for the defendant made a motion for a directed verdict of acquittal based on the fact that the government had not proved beyond a reasonable doubt that there was a specific intent to form a scheme or that a scheme had been formed. Tr. I at 132, 199. On cross-examination of claims examiner Grometer, defense counsel did question whether the witness was positive that the report of theft loss form sent to the insurance company had come through the United States mails. *Id.* at 41–42. However, defense counsel chose not to cross-examine another claims examiner, Phillip Dimitrijevic, or NATB manager Michael Buchanan after they categorically testified that the two theft loss forms sent to the insurance company and NATB had come through the United States mails. *Id.* at 55, 131. Regardless of whether defense counsel challenged at trial the sufficiency of the evidence on the use of the mails, this

court can review the evidence in the light most favorable to the government to determine if the government met its burden of proof.

5. Brooks also claims that there was insufficient evidence concerning his handwriting to prove that he was the individual who mailed the forms or caused them to be mailed to Sentry and NATB. Since we find that there was insufficient proof that the forms were even mailed, we do not address this issue.

6. 18 U.S.C. § 1341 provides:
   Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, shall be fined not more than $1,000 or imprisoned not more than five years, or both.

the correspondence was mailed would constitute strong direct evidence of the use of the mails. *United States v. Ledesma*, 632 F.2d 670, 675 (7th Cir.), *cert. denied*, 449 U.S. 998, 101 S.Ct. 539, 66 L.Ed.2d 296 (1980). Proof of the use of the mails can also be circumstantial, such as testimony regarding office practice, so long as the circumstances proven directly support the inference and exclude all reasonable doubt to the extent of overcoming the presumption of innocence. *United States v. Ledesma*, 632 F.2d at 675; *Whealton v. United States*, 113 F.2d at 713.

In the present case, proof of the use of the mails had to be by circumstantial evidence on both Counts III (Sentry's report of theft loss form) and Count V (NATB's owner's report of stolen vehicle form) since no witnesses testified that they had seen the stamped envelopes and the stamped envelopes were not introduced at trial. When the government questioned Grometer, the Sentry claims examiner, she stated that Sentry had received the report of theft loss form in the mail. She emphasized that she knew the form had been received in the mail because it had been date-stamped. The claims department had affixed the date-stamp to reflect that the correspondence had been received on a specific date. Tr. I at 37. On cross-examination, however, Grometer admitted that both correspondence sent in the United States mails and correspondence sent by private mailing agencies were date-stamped, so that she would have no way of knowing if the report of theft loss form had come through the United States mails by merely looking at the date-stamp. *Id.* at 42.[7]

Similar to the testimony of Grometer, Buchanan, the NATB manager, testified that the owner's report of stolen vehicle form involved in Count V was sent through the United States mails. When questioned as to how he knew that the form was returned in the mails, Buchanan replied

that returning such forms in the United States mails was the normal business practice. Buchanan never stated that he either saw the return envelope or that only matter coming through the United States mails was date-stamped.

We hold that there was insufficient evidence produced at trial to prove beyond a reasonable doubt that Brooks mailed Sentry's report of theft loss form or NATB's owner's report of stolen vehicle form. Courts have held that the use of the mails has not been sufficiently established where a witness testifies that the mail department stamps letters returned by both the United States mails and by private mailing services. *See United States v. Stull*, 521 F.2d 687, 690 (6th Cir.1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976); *United States v. Joyce*, 499 F.2d 9, 18 (7th Cir.), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *United States v. Ellicott*, 336 F.2d 868, 870–71 (4th Cir.1964); *United States v. Browne*, 225 F.2d 751, 756 (7th Cir.1955); *United States v. Baker*, 50 F.2d 122, 123–24 (2d Cir.1931). In *United States v. Joyce*, this court reversed a mail fraud conviction involving a scheme to defraud firms engaged in the business of placing insurance risks because a witness testified that the mail department opened and date-stamped privately delivered correspondence as well as letters sent through the United States mails. 499 F.2d at 13, 18. The court concluded that since the only witness testifying as to the use of the mails had a reasonable doubt as to the manner of transmittal, the jury had to speculate to reach its verdict. *Id.* at 18.

In contrast, in cases where the testimony reveals that only the correspondence received through the United States mails is date-stamped, the courts have held that there is sufficient evidence as to use of the mails. *See United States v. Ledesma*, 632 F.2d at 675–76; *United States v. Cady*, 567

---

7. On redirect examination, Grometer testified that during her tenure at the insurance company, documents similar to the report of theft loss ny, documents similar to the report of theft loss

form in this case were "very rarely" received other than through the United States mails. Tr. I at 42.

F.2d 771, 775 (8th Cir.1977); *United States v. Shavin,* 287 F.2d 647, 652 (7th Cir.1961). For example, in *United States v. Ledesma,* this court affirmed a mail fraud conviction against a defendant who had falsely reported the theft of his new motor home. 632 F.2d at 672–75. An insurance company claims adjuster testified that he personally date-stamped all correspondence that he received through the United States mails, but did not date-stamp correspondence received by other means. *Id.* at 675 & n. 8. Since the affidavit of loss form was date-stamped, the court concluded that the evidence was sufficient to support the inference that the defendant had sent the letter through the mails. *Id.* at 675.

In the present case, the testimony proved no more than a probability that the mails had been used. The government placed its principal reliance on an inference from the insurance company's and NATB's customary practice of receiving such forms in the mails. Grometer could not be certain that Sentry's claim form had been returned in the mails by merely viewing the date-stamp because both correspondence delivered by the mails and by private mailing services were date-stamped. The mere testimony by Buchanan of NATB that it was his organization's usual practice to receive such forms in the United States mails is also insufficient to prove that the mails rather than a private mailing service were used. Furthermore, when Grometer stated that "very rarely" did Sentry receive claim forms other than through the United States mails, she was testifying from her mailroom experience gained eight years prior to Brooks' claim when the use of private mailing services was not as popular as it has become today. Based on the evidence presented at trial, this court must hold that a rational trier of fact could not have found that the defendant was guilty beyond a reasonable doubt.

In conclusion, the district court's conviction of Brooks on both Counts III and V is reversed.