UNITED STATES of America,
Plaintiff–Appellant,

v.

Jerry M. MATT, Defendant–Appellee.

No. 87–3108.

United States Court of Appeals,
Fifth Circuit.

Feb. 19, 1988.

J. Arthur Smith, III, Baton Rouge, La., (court-appointed), for plaintiff-appellant.

Randall B. Miller, Asst. U.S. Atty., Donald L. Beckner, U.S. Atty., Baton Rouge, La., for defendant-appellee.

Before CLARK, Chief Judge,
BRIGHT* and GEE, Circuit Judges.

GEE, Circuit Judge:

Jerry Matt was indicted and convicted by a jury for mail fraud denounced by 18 U.S.C. § 1341. His appeal raises issues regarding the proper scope of the federal statute, the evidentiary basis for his conviction, and the restitution that he was required to make. In affirming the district court, we evaluate Matt's contentions in light of *McNally v. United States,* — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) which recently tightened the requirements for evaluating allegations of federal mail fraud.

A. *The Boundaries of 18 U.S.C. § 1341.*

18 U.S.C. § 1341 prohibits the use of federal mails to further "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." *See* 18 U.S.C. § 1341 (1984). Matt, a former division manager for Brown & Williamson Tobacco Corporation, was convicted of violating this statute by using the mails in sending false expense reports to the company to further a scheme that deprived the company of its money and the use of its tobacco products.

*Background*

Matt's division serviced approximately 3,000 retail stores, about 850 restaurants and bars, and about 40 chains which sold cigarettes in Louisiana. The business purpose of the division was to promote the sale of Brown & Williamson Tobacco products. Matt and his sales representatives had two major methods of promoting their company's products. First, they would purchase cigarettes from wholesale distributors with funds provided by Brown & Williamson. They would use this purchase as "car stock" and would sell them at wholesale prices to retail customers that were running low. Second, they would promote Brown & Williamson products either by paying a retailer to display the products or by providing the retailer with free cigarettes to engage in programs such as "buy one get one free."

Company procedures required Matt to file two types of reports. First, the division's monthly expenses were to be recorded on "SA 121M" forms. Second, payments to retailers for placement of promotional displays were to be recorded on "SA 252R" forms. It was the recording of *false* entries and the *mailing* of these forms to Brown & Williamson Company that triggered the prosecution of Matt for violation of 18 U.S.C. § 1341.

Matt's scheme involved removing complimentary tobacco products used in promoting sales and exchanging them through sales representatives for salable merchandise. This merchandise would then be sold, with the proceeds going to Matt. In order to prevent the company from learning about this scheme, Matt would then force sales representatives to file false reports with respect to the placement of the complimentary goods, reports which he would then mail to the company.

*The Scope of 18 U.S.C. § 1341.*

*McNally v. United States,* — U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) interpreted the requirements of 18 U.S.C. § 1341. In reversing a conviction because the jury charge was not within the reach of the statute, the Court read the language and legislative history of § 1341 as limiting its scope to the protection of money or property rights and not as extending to intangible ones—such as those of the citizenry to good government. *Id.,* 107 S.Ct. at 2877.

■ In today's case, the jury found that Matt deprived Brown & Williamson Tobacco Company of its money and property: his scheme damaged the company's sales by taking the complimentary products off the market, thus interfering with their pro-

* Circuit Judge of the Eighth Circuit, sitting by designation.

motional purpose.[1] In addition, by mailing in false reports regarding the placement of the complimentary products, Matt denied Brown & Williamson Tobacco Company "economically material information." Our circuit has held, as have others,[2] that in an unregulated market economic detriment sufficient to constitute a mail fraud violation can be shown if the employer is denied "economically material information" that "would lead a reasonable employer to change its business conduct." *See United States v. Fagan*, 821 F.2d 1002, 1009 (5th Cir.1987). In such a circumstance, information is considered a tangible property right.

The sale of tobacco products involves an unregulated market. The filing of false reports by Matt distorts the business judgment of Brown & Williamson Tobacco Company regarding the sale of its products and, in doing so, produces an economic detriment by partially denying the company the value of its money and property and impeding the efficient management of its business.

Matt contends, however, that the holding in *McNally* limiting the scope of § 1341 leaves reversible error in the district court's jury charge. In that charge, he maintains, the court confused the jury by noting that Matt was accused of a scheme to defraud Brown & Williamson of its money, property and right to the honest services of Matt. By acting on this instruction, the argument runs, the jury may have convicted Matt of failure to provide honest services—an intangible right that *McNally* holds is outside the scope of § 1341.

This claim has no merit. The district court mentioned "honest service" once, in the context of reviewing the indictment;

and it made clear to the jury that the indictment was not to be considered by the jury as evidence of guilt. In addition, when setting out for the jury what the government had to prove to establish Matt's guilt under § 1341, the court correctly limited the coverage of the statute to money and property; and in determining that Matt hurt the company's sales by taking the company's complimentary products out of the market and by filing false reports, the jury properly limited itself to an assessment of the effect of Matt's scheme on Brown & Williamson's tangible rights.

### B. *Sufficiency of the Evidence.*

To show a violation of § 1341, as the court properly instructed the jury, the government had to prove beyond a reasonable doubt that Matt devised a scheme to deprive Brown & Williamson of its money or property. Proof that the defendant had used the United States mails in order to execute his scheme was also necessary, and Matt contends that the testimony by the government's sole witness to the receipt of the mail was insufficient because there were no underlying facts to support the conclusion that Matt had used the mails to further his scheme.

■■■ This claim also fails. Based on established federal law, when a defendant raises a claim with respect to the sufficiency of the evidence, appellate courts review the facts in the light most favorable to the verdict. *United States v. Brooks*, 748 F.2d 1199, 1202 (7th Cir.1984) (reversing conviction for mail fraud under 18 U.S.C. § 1341); *see also Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The standard of review is whether a rational trier of fact could have found

---

**1.** It may be argued that the resale of complimentary cigarettes produces no direct loss in profits for the firm since the product was complimentary to begin with. This argument does not account for the economic value that is derived from increasing demand through the promotional program.

**2.** Other circuits have supported the conclusion that the denial of economically relevant information constitutes a deprivation of money or property under 18 U.S.C. § 1341. *See United States v. George*, 477 F.2d 508 (7th Cir.), *cert.*

denied, 414 U.S. 827, 94 S.Ct. 49, 155, 158, 38 L.Ed.2d 61 (1973) (Zenith Radio Corporation as a result of kickback scheme by employee denied material knowledge that the supplier would accept less profit); *United States v. Connor*, 752 F.2d 566, 573 (11th Cir.), *cert. denied*, 474 U.S. 821, 106 S.Ct. 72, 88 L.Ed.2d 59 (1985) (employer defrauded by kickback scheme of employee even if purchase price within range of market price because without fraud employer may have gotten better deal).

from the evidence and inferences drawn therefrom that the defendant was guilty beyond a reasonable doubt. *United States v. Brooks,* 748 F.2d at 1202. Proof of use of the mails may be direct or circumstantial. *Id.* at 1202–03. Finally, the court must "accept all credibility choices that tend to support the jury's verdict." *United States v. Bigham,* 812 F.2d 943, 947 (5th Cir.1987).

In this case, the jury heard the testimony of Marie Summers, whose job it was to receive the reports as they came through the mail. She testified that she knew Matt and remembered receiving his reports through the mail. Matt had the opportunity to cross-examine her and could not shake her testimony. In addition, Matt's own witness, Mr. O'Brien, denied that he received a hand-delivered report from Matt as Matt had claimed. On such evidence, it was perfectly rational for a trier of fact to find that Matt had used the mails to send his reports. We must accept such credibility choices, especially viewing these facts in a light favorable to the government. Thus there is sufficient evidence to support the jury finding that Matt had used the mails—an element necessary to establishing a violation of § 1341.

### C. *Restitution*

Under the authority of 18 U.S.C. § 3663(a)(1), the district court ordered Matt to make restitution to Brown & Williamson Tobacco Company for the losses that they had suffered as a result of Matt's violation of 18 U.S.C. § 1341.[3] After considering the evidence, the court settled on a figure of $130,000.00. This was arrived at by first establishing the amount of the documented claims ($360,000.00) that Brown & Williamson Company sent to the bonding company which had insured Matt's honest

services and the amount of administrative costs necessary to ascertain Brown & Williamson's losses ($30,000.00).[4] This sub-total ($390,000.00) was then reduced by the amount that the bonding company had paid to Brown & Williamson ($260,000.00).[5] This method is within the bounds of the court's authority to order restitution under 18 U.S.C. § 3663.

### *Conclusion*

Matt's case poses a principle issue arising in prosecutions for mail fraud under 18 U.S.C. § 1341—the boundaries of the statute. In light of *McNally,* the proper scope of the statute is limited to schemes directed at money or property. In the present situation, Matt deprived Brown & Williamson Tobacco Company of sales by interfering with its promotional programs and denied the company "economically material information" by mailing in false reports.

AFFIRMED.

---

**3.** 18 U.S.C. § 3663(a)(1) authorizes a court to "order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense" under this title.

**4.** The record and the district court's methodology in arriving at the restitution amount satisfies the concern that there be a "factual basis ... to support a specific amount." *United States v. Brown,* 699 F.2d 704, 712 (5th Cir.1983).

**5.** Under 18 U.S.C. § 3663(e)(1), the court could have "in the interest of justice, order restitution to any person who has compensated the victim for such loss to the extent that such person paid the compensation." However, the district court noted that the insurance company had waived subrogation.

The district court also declined to charge interest on the value of the losses to Brown and Williamson.