UNITED STATES of America

v.

BURKS, (M.D.) Charles J.

Appeal of Charles J. BURKS, M.D.

No. 88–3334.

United States Court of Appeals, Third Circuit.

Argued Jan. 11, 1989.

Decided Feb. 14, 1989.

Rehearing Denied March 9, 1989.

William F. Manifesto, Ellen Viakely (argued), Manifesto, Doherty & Donahoe, P.C., Pittsburgh, Pa., for appellant.

Paul J. Brysh, Bonnie Schleutter (argued), Asst. U.S. Atty., Pittsburgh, Pa., for U.S.

---

1. No question of attorneys fees is presented by this appeal.

Before HIGGINBOTHAM, COWEN and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal from the final judgment of conviction and sentence imposed upon Appellant, Charles J. Burks, M.D., pursuant to a jury verdict of guilt of mail fraud in violation of 18 U.S.C. § 1341 (1982). The Appellant contends that his conviction cannot stand because there was insufficient evidence of record for the jury reasonably to conclude that he wilfully participated in a scheme to defraud insurance companies by submitting fraudulent medical bills with the knowledge and intent that they be forwarded to insurance companies to induce recovery. The Appellant also contends that the government failed to demonstrate that the United States mails were used to accomplish the alleged fraud and, therefore, that his conviction under the federal mail fraud statute cannot stand.

We conclude that the government failed to present sufficient evidence that the United States mails were used to accomplish the alleged fraud. Accordingly, we will reverse the judgment of conviction.

## I. *Background*

The indictment in this case charged Appellant, Dr. Charles Burks, with several instances of submitting fraudulent medical bills to an attorney, Donell Reed, that were subsequently submitted to insurance companies in support of claims for recovery from auto accidents. Burks and Reed apparently had a long established relationship of cross-referrals. The government alleged that Burks and Reed participated in a scheme to defraud the insurance companies by inflating the medical bills to reflect treatment that was never given in order to increase the recovery. The indictment listed sixteen counts of such fraud representing sixteen separate occurrences. Subsequently, however, four of these counts were dismissed by the district court as unsupported by the evidence presented by the government. Three other counts were dismissed by the government.

The jury returned a verdict convicting Burks of only Count 3 which charged that

> [i]t was a part of the scheme and artifice to defraud that [Burks] would submit false and inflated medical reports and bills to [Reed] knowing that said reports and bills would be presented to insurance companies and self-insured business entities by [Reed] in support of personal-injury claims of clients of [Reed].

Joint Appendix ("Jt. App.") at 7–8. In support of that Count, the government alleged nine specific incidents of fraudulent medical records submitted by Burks. (These occurrences were charged in separate counts of the indictment as well).[1]

---

1. To prove these incidents, the government's principal evidence was testimony of the patients themselves regarding their recollections of the length, type and frequency of treatment by Burks. The testimony was generally not well presented and not particularly supportive. Several of the witnesses recanted initial statements regarding treatment by Burks and recalled incidents of treatment that called into doubt the government's allegation that Burks had fraudulently prepared their medical reports. Moreover, one medical report that the government had proposed as evidence of Burks's intent to defraud, was ruled inadmissible because it had not been signed by Burks, but rather by someone who forged Burks's signature. The evidence was so scattershot and weak that at one point the district court remarked:

   > This is a case that should never have been brought before a grand jury. You should have told the grand jury ... that there was a

forgery of signatures here. And if the Postal Inspectors don't have enough experience due to their inexperience to know what a federal case is, then you have a duty to act as a failsafe mechanism, and if you don't act as a failsafe mechanism, an Article III Judge will, because if this man is found guilty of any count in this case, I am entering a judgment of acquittal. Your witnesses are so woefully weak that I don't think you had probable cause to believe a crime was committed so as to present the matter to a grand jury, let alone to a jury of twelve.

   Jt. App. at 205. Notwithstanding this harsh critique of the government's case, after the jury returned a guilty verdict on Count 3, the district court denied a motion for acquittal.

   We need not reach the question of the sufficiency of the evidence of intent to defraud in light of our finding of insufficient evidence concerning use of the mails. We admonish the

## II. *Evidence of Use of Mails*

Burks cites this Court's decision in *United States v. Pearlstein*, 576 F.2d 531 (3d Cir.1978) for the test of what must be demonstrated to sustain a conviction on § 1341. *Pearlstein* states, simply, that to sustain a conviction on that statute, the government must demonstrate: (1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme charged with the specific intent to defraud; and (3) the use of the Postal Service to execute the scheme. Burks contends *inter alia*, that the government failed to demonstrate that the report was actually mailed in the United States mails (as opposed to delivered via a private courier) and that the government thus failed to meet its burden of proof under § 1341. We agree.

In support of its argument that the report was actually mailed, the government relies only upon circumstantial evidence concerning the standard business practice of Reed's office and the insurance company's usual experience of receiving such correspondence through the mail. No evidence was presented concerning the Reed correspondence specifically. Although circumstantial evidence may be used to prove the element of mailing essential to conviction under § 1341, reliance upon inferences drawn from evidence of standard business practice without specific reference to the mailing in question is in-

sufficient. "Proof of the use of the mails can ... be circumstantial, such as testimony regarding office practice, so long as the circumstances proven directly support the inference *and exclude* all reasonable doubt to the extent of overcoming the presumption of innocence." *United States v. Brooks*, 748 F.2d 1199, 1203 (7th Cir.1985) (emphasis added). *See also Whealton v. United States*, 113 F.2d 710, 713 (3d Cir. 1940). *Cf. United States v. Srulowitz*, 785 F.2d 382, 387 (2d Cir.1986) (mere speculation that if letter had been in files it must have been mailed was too "thin" to support mailing element of offense). The testimony of Reed's secretary (Zacchero) and the Harleysville Insurance representative (Walters) reflects only the standard business practices of those offices, and does not exclude other possibilities for the sending or receipt of correspondence. Zacchero testified that most of the time correspondence was sent by United States mails, but sometimes by delivery; Walters testified that "99 percent" of the time the mails were used. Thus, the testimony of Zacchero and Walters establishes nothing more than a probability that the mails had been used. "[P]robability is not enough to convict a party of mail fraud." *United States v. Scott*, 730 F.2d 143, 147 (4th Cir.), *cert. denied sub nom Wilson v. United States*, 469 U.S. 1075, 105 S.Ct. 572, 83 L.Ed.2d 512 (1984). *See also Brooks*, 748 F.2d at 1204; *United States v. Ellicott*, 336 F.2d 868, 871 (4th Cir.1964).[2]

government, however, that when it presents an indictment it must be assured that criminal prosecution is warranted by the evidence of record. Although the question of sufficiency of the evidence is " 'factual' in nature, [it] is conceptually one of law," *United States v. Dixon*, 658 F.2d 181, 188 n. 12 (3d Cir.1981) (citing *United States v. Steed*, 646 F.2d 136, 142 n. 12 (4th Cir.1981), *cert. denied* 459 U.S. 829, 103 S.Ct. 67, 74 L.Ed.2d 68 (1982), and while our review of the evidence supporting a jury verdict is in the light most favorable to the government, our scrutiny of the legal sufficiency of that evidence is nonetheless scrupulous.

2. The government also argued that evidence concerning the date of the letter and its receipt by the insurance company demonstrated that the United States mails had been used. The government contended that Reed's letter was dated December 31 and date stamped received

on January 3. This fact, the government argues, is evidence that the letter was not hand delivered or express mailed, presumably because it would have arrived and been stamped on the 2nd if it had. We consider this circumstantial evidence to be extraordinarily weak, particularly since no evidence had been presented to exclude the possibility that the letter arrived at the office a day or two *before* it was date stamped, or that it was mailed a day or two *after* it was dated. The dates in question surround the New Year's holiday. Even if the letter was received on January 2nd, it may not have been date stamped as received until the 3rd, given that the office may not have been operating at full service on the day after the January 1st holiday. Alternatively, it is certainly not impossible that a letter that was typed and dated in the afternoon of December 31, was not deposited for express delivery until the morning of January 2nd.

Our conclusion in this appeal is supported by our holding in *United States v. Hart*, 693 F.2d 286 (3d Cir.1982). In *Hart* this Court reversed a conviction on a mail fraud count because the government's only evidence of the use of mails was testimony that something had been "sent." The Court held that since delivery by personal messenger or courier could not be ruled out as the method by which the document was "sent," the government had not sustained its burden of proving each of the essential elements of mail fraud. This Court stated that "[w]hen the government charges a defendant with mail fraud, it must at minimum clearly and explicitly prove that the mailing occurred." *Id.* at 289. In the present case the government's failure to prove "clearly and explicitly" that a mailing occurred leads us to conclude that one of the essential elements of § 1341 was not proven and, accordingly, that Burks's conviction must be reversed.[3]

---

3. Because our holding is premised upon an insufficiency of the evidence, a retrial of Burks on this charge would constitute double jeopardy and, therefore, is precluded. *See Justices of Boston Municipal Court v. Lydon*, 466 U.S. 294, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984); *Burks v. United States*, 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978) ("[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding"); *United States v. Beros*, 833 F.2d 455, 467 n. 13 (3d Cir.1987).