**UNITED STATES of America, Plaintiff,**

v.

**J. William OLDENBURG, et al., Defendants.**

**No. CR–89–0033 EFL.**

United States District Court,
N.D. California.

April 24, 1991.

Nanci Clarence, Asst. Federal. Public Defender, San Francisco, Cal., for Oldenburg.

Gerard J. Hinckley, Walnut Creek, Cal., for Mandel.

Michael Nerney, Asst. U.S. Atty., San Francisco, Cal., for U.S.

AMENDED ORDER GRANTING DEFENDANTS' MOTION UNDER FED.R. CRIM.P. 29 FOR JUDGMENT OF ACQUITTAL ON COUNT SEVEN OF THE INDICTMENT

LYNCH, District Judge.

**A. SUMMARY**

Defendants have properly motioned for a judgment of acquittal, pursuant to Fed.R. Crim.P. 29, on count seven of the indictment after the close of all evidence and prior to submission to the jury. For the reasons set forth herein, defendants' motion is granted.

**B. THE STANDARD FOR JUDGMENT OF ACQUITTAL PURSUANT TO FED.R.CRIM.P. 29**

The standard governing motions for judgment of acquittal is familiar. The district court is required to determine whether, viewing the evidence in the light most favorable to the government, there was sufficient evidence from which a jury could rationally conclude beyond a reasonable doubt that the defendant was guilty of the count charged. *U.S. v. Toomey*, 764 F.2d 678, 680 (9th Cir.1985), *cert. denied*, 474 U.S. 1069, 106 S.Ct. 828, 88 L.Ed.2d 799 (1986). If the court does not so find as to each element of the offense charged, a judgment of acquittal must be entered.

**C. DISCUSSION**

In count seven, the government has alleged that the defendants engaged in a "scheme and artifice to defraud" in that they "did knowingly cause to be placed in an authorized depository for mail ... a letter dated April 24, 1984, addressed to John E. Morris, Supervisory Agent, Federal Home Loan Bank Board ...," in violation of 18 U.S.C. section 1341, which proscribes mail fraud. In order to obtain con-

viction on this count, the government must sustain its burden of proof to show: (1) the existence of a scheme to defraud; (2) the participation by the defendant in the particular scheme charged with the specific intent to defraud; and (3) the use of the U.S. Postal Service to execute the scheme. *United States v. Pearlstein*, 576 F.2d 531 (3d Cir.1978). Defendants argue that there is insufficient evidence from which any rational jury could find beyond a reasonable doubt that the letter at issue, dated April 24, 1984, was mailed via the U.S. Postal Service and thus that the U.S. Postal Service was used to execute the fraudulent scheme.

At trial, the government introduced testimony of one of the co-defendants, Mr. Mandel, from his prior criminal trial in 1989. Mr. Mandel stated that he received a letter from Mr. Morris on or after April 19, 1984. In response to that letter, Mr. Mandel conceded that he did "send" a letter to Mr. Morris on April 24, 1984.[1] When asked if his usual mechanism for transmitting letters at that time was overnight federal express, Mandel responded, "No, I wouldn't say that." However, when asked if his usual mechanism was the U.S. mails, Mandel stated "I think it depended upon perception of the speed with which I wanted to have something communicated." Mandel's testimony is the soul of equivocation with respect to whether the April 24th letter was sent by private mail service or the U.S. Postal Service. Indeed, Mandel was not asked whether the April 24 letter was one requiring or not requiring a speedy transmittal.

The other relevant evidence was the trial testimony of Mr. Morris, the Supervisory Agent at the Federal Home Loan Bank Board (hereinafter "FHLBB"). He testified that he received the letter of April 24th from Mr. Mandel. When questioned with respect to the manner, he stated "I believe I received it in our Mail Room."

He noted that the letter had a date stamp, applied in the mail room, of April 27th, which signified "that we received it in the U.S. mail in our mail room."

On cross-examination, however, Mr. Morris retreated from this position and admitted that he had no knowledge of how the letter actually got into the mail room. Upon examination by the Court, he explained that hand-delivered, private courier mail would not normally go to the mail room, the locus of the date-stamping machine, but rather was delivered directly to the individual person. When asked if hand-delivered mailed is stamped the day of receipt, he testified "not unless a person makes an effort to go down to the mail room and have them stamp it." When questioned whether if it was a practice to stamp hand-delivered, private-courier items, Mr. Morris at first stated "No," but contradicted himself within the same answer, stating that "if ... something came into our office on the 18th floor, you would have to physically walk down [to the mail room] and do it [date stamp it], which I did all the time." Finally, when asked if the date-stamp indicated that the letter was *either* hand-delivered to the mail room *or* mailed to it, Morris responded "Yes."[2]

The prosecution relies upon several decisions of the Ninth Circuit in support of its position that the evidence is sufficient to establish the U.S. mails element of section 1341. However, those decisions, which touch briefly upon this question, enunciate only general propositions, indicating an awareness that each case must turn upon its particular facts. For example, the prosecution cites *U.S. v. Brackenridge*, 590 F.2d 810 (9th Cir.1979), *cert. denied*, 440 U.S. 985, 99 S.Ct. 1801, 60 L.Ed.2d 248 (1979), for the proposition, now well-settled, that direct proof of mailing is not required to establish the use of mails. The progeny of *Brackenridge* have construed it to mean that evidence of routine custom and prac-

---

**1.** *See United States v. Hart,* 693 F.2d 286, 289 (3d Cir.1982) ("send" is a generic concept and may, but does not necessarily, mean "mail").

**2.** Additionally, the Court notes that Mr. Mandel testified that he sent the letter on April 24th, and Mr. Morris testified that it was date-stamped on April 27th. The three-day period

thus indicated is some evidence that the U.S. mail may have been used. However, evidence that a letter was "sent" by unknown means one day and received three days later is not evidence beyond a reasonable doubt that the U.S. mail was employed.

tice can be sufficient to support an inference that something was mailed. *U.S. v. Green*, 745 F.2d 1205, 1208–09 (9th Cir. 1984), *cert. denied*, 474 U.S. 925, 106 S.Ct. 259, 88 L.Ed.2d 266 (1985). In *Brackenridge*, an employee initialed a cross-country withdrawal request received in a saving fund's "bank-by-mail" department. The department's manager testified that the routine custom and practice of such cross-country withdrawal requests would result in a mailing. The court found that this circumstantial evidence was sufficient to establish the mails element under section 1341.

The instant case is distinguishable from *Brackenridge* in one critical respect—it fails to establish a routine custom sufficient to support an inference that the letter at issue was transmitted via the U.S. mail. In *Brackenridge*, the mail department manager testified that the letter was received by the "bank-by-mail" department and that such letters customarily had been mailed.[3] In the case at bar, the critical witness testified that the letter's date-stamp indicated to him it was received by U.S. mail in the mail room. However, he conceded that he did not know how the letter actually got to the mail room, that hand-delivered mail was delivered to the person, and that such mail might be date stamped if taken down to the mail room, which he did "all the time." Thus, Mr. Morris' testimony fails to establish that the date-stamp mark routinely or customarily was placed upon only U.S. mail. Rather, it establishes only that such a mark indicates that the letter eventually made its way to the mail room, after either having been mailed or hand-delivered.[4]

A later Ninth Circuit decision, *U.S. v. Green*, 745 F.2d 1205 (9th Cir.1984), is inapposite for similar reasons. There, the court found that evidence that an employee placed the letter in question in the "outgoing" basket, and that mail so placed was routinely picked up and placed in the U.S. mail, was sufficient to establish the mail element. Here, by contrast, Mr. Morris testimony established that letters by U.S. mail were date-stamped in the mail room, but he also conceded that he would take privately-delivered mail as well to the room and have it date-stamped. In short, Mr. Morris' testimony does not rise to the level of establishing a routine or custom relating to receipt of U.S. mail, but at most one relating to U.S. mail and privately-delivered mail.

*U.S. v. Miller*, 676 F.2d 359 (9th Cir. 1982), *cert. denied*, 459 U.S. 856, 103 S.Ct. 126, 145, 74 L.Ed.2d 109, 123 (1982), presents a closer analogy, but is not persuasive on the fact before the Court. In *Miller*, the court held that where an employee testified that all hand-delivered documents were marked delivered, but admitted to some exceptions, evidence that a letter was not marked "delivered" was sufficient proof that the letter had been mailed. The *Miller* case properly admits of this construction: a routine custom or practice need not be invariable in order to support an inference of "mailing" beyond a reasonable doubt. *See also United States v. Keplinger*, 776 F.2d 678, 691 (7th Cir. 1985), *cert. denied*, 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986) (proof of "invariable" office custom not required); *but see United States v. Burks*, 867 F.2d 795, 797 (3d Cir.1989) (evidence found insufficient where office procedure was use of mails "most" or "99%" of the time, with some exceptions). Even so, this does not relieve the prosecution of its burden of establishing use of the mails beyond a mere probability. *See United States v. Massey*, 827 F.2d 995, 999 (5th Cir.1987); *see also United States v. Srulowitz*, 785 F.2d 382, 387 (2d Cir.1986), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 111

---

**3.** *Brackenridge* was handed down in 1979 before the burgeoning of the private, overnight-mails services. Consequently, the opinion may not have had to consider the possibility, at present quite significant, that mail may be transmitted by those alternative means.

**4.** Furthermore, the Court notes that the witness in *Brackenridge* had substantial responsibilities

and knowledge with respect to the handling of the mail at issue. There, the witness was the manager of the mail department itself, testifying as to routine custom. By contrast, Mr. Morris is a supervisory agent, whose responsibilities do not extend to the mail room, although he does claim knowledge of how mail is handled.

(1987); *United States v. Brooks*, 748 F.2d 1199, 1204 (7th Cir.1984).

In *Miller*, the evidence indicated that almost all documents that were transmitted by the U.S. mail would not be marked, thereby establishing an office custom which, though not absolute, was sufficient to establish the mailing element. Here, by contrast, the witness did not testify as to any general practice, with some exceptions, but rather testified that documents arriving by U.S. mail were date-stamped and that those arriving via private-delivery sometimes got date-stamped too. The evidence does not establish a nearly invariable office custom, but, at best, amounts to a mere likelihood that the mails were used.

A case with quite similar facts and therefore of strong persuasive value is *United States v. Brooks*, 748 F.2d 1199 (7th Cir. 1984). In *Brooks*, an employee testified that she "knew" a form had been received via the U.S. mail because it had been date-stamped by the claims department. On cross-examination, the witness admitted that both correspondence via the U.S. mails and private mail were date-stamped, so that she would have no way of knowing if the form had come by U.S. mail merely by fact of the date-stamp. The *Brooks* court reversed the conviction for mail fraud.[5]

The Court is presented here with strikingly similar facts. Although Mr. Morris initially testified that the date stamp indicated to him that the letter had been received "in the U.S. mail in the mail room," he later conceded that the date-stamp indicated that the letter was either received through the U.S. mail or through private, hand-delivery. As the court in *Brooks* observed, "Proof of the use of the mails can also be circumstantial, such as testimony regarding office practice, so long as the circumstances proven directly support the inference and exclude all reasonable doubt to the extent of overcoming the presump-

tion of innocence." *Id.* at 1203. Here, the circumstantial evidence of office practice is insufficient to directly support an inference beyond a reasonable doubt that the U.S. mails were used. At best, viewed in the light most favorable to the government and drawing inferences favorable to their position, the evidence supports a probability that the mails were used. A mere probability is not enough to support a conviction for mail fraud.

## D. CONCLUSION

The Court finds that there is insufficient evidence for a rational jury to find beyond a reasonable doubt that the U.S. Postal service was used to execute the alleged fraud. Accordingly, defendants' motion for a judgment of acquittal on count seven is hereby GRANTED.

IT IS SO ORDERED.

---

5. Other decisions, noted in *Brooks*, have held that the use of mails is not sufficiently established where the evidence indicates that the office procedure was to stamp both letters transmitted by the United States mails and those by private mailing services. *E.g., United States v. Stull*, 521 F.2d 687, 690 (6th Cir.1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 794, 46 L.Ed.2d

649 (1976); *United States v. Joyce*, 499 F.2d 9, 18 (7th Cir.1974), *cert. denied*, 419 U.S. 1031, 95 S.Ct. 512, 42 L.Ed.2d 306 (1974); *United States v. Ellicott*, 336 F.2d 868, 870–71 (4th Cir.1964); *United States v. Browne*, 225 F.2d 751, 756 (7th Cir.1955); *United States v. Baker*, 50 F.2d 122, 123–24 (2d Cir.1931).