**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 94-10870

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EARL MONROE FOX,

Defendant-Appellant.

Appeal from the United States District Court
For the Northern District of Texas

November 2, 1995

Before POLITZ, Chief Judge, WISDOM, and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Earl Monroe Fox appeals his conviction for mail fraud, equity skimming, and aiding and abetting. He also raises the question of whether the district court committed error when it admitted evidence of past disciplinary action against him by the Texas Real Estate Commission. For the following reasons we find no error by the district court and affirm Fox's convictions.

## BACKGROUND

Earl Fox and his wife, Willie, formed T.I.M.N. and Associates in the late 1980's to take advantage of depressed prices in the Dallas/Fort Worth and Lubbock, Texas, real estate markets. Through T.I.M.N. Fox acquired at least seventeen homes by offering to assume the payments on existing mortgages in return for the transfer of the property. He then rented the homes for an amount less than the monthly payment owed to the mortgage company. However, instead of applying the rental income to the mortgage payments, Fox appropriated those monies for personal and family expenses. He continued collecting rent on the property until foreclosure on the property was

completed and the tenants were evicted.

On June 17, 1993, Fox and his wife were charged with mail fraud, conspiracy, equity skimming, and aiding and abetting mail fraud and equity skimming. At the jury trial seventeen homeowners testified that they signed a document allowing Fox to assume the loans on their homes in reliance on his promise to make the mortgage payments.

The renters of the properties also testified against Fox regarding their rent payments. These rent payments constituted the mail fraud counts of the indictment. One renter, Joseph Strain, identified his check payments, but he did not specify that he sent his payments to Fox through the United States mail. Michael DePaul also testified that he mailed rent checks to Fox; but, like Strain, he did not specify that he meant the United States Postal Service when he used the term "mailed." A third person, Elizabeth Jackson, testified that she mailed a rent check to Fox along with a letter noticing him she was terminating the tenancy. The postmarked envelope in which her check was mailed was also introduced as evidence. She said that Fox allowed her to breach her lease and returned her deposit but that Fox retained her rental payments.

In support of the equity skimming charge, the jury heard Fox's admission on cross-examination that he assumed the mortgages of the houses in question, rented them, and applied the rental payments to his personal expenses rather than the mortgages. The government also introduced evidence of disciplinary action by the Texas Real Estate Commission against Fox involving activities preceding the events described in the indictment. The group suspended Fox's real estate license for sixty days. In his suspension documents, Fox admitted that

> [H]e had entered into a contract whereby he purported to act as trustee for himself and his wife, and he had agreed to purchase a home; that in the sales contract Fox was required to assume the unpaid principal balance of a first lien promissory note payable to a mortgage company; that the owners conveyed the property to Fox by warranty deed, as well as a signed loan assumption agreement; and that Fox promised the owner that he would make the mortgage payments when due.

Fox also admitted that

> he failed to pay the mortgage payments, failed to pay the loan assumption fee, and failed to file the warranty deed; . . . he had entered into this contract knowing that he could not make the mortgage payments called for in the contract and concealed this information from the owners and their real estate broker.

The jury acquitted Fox's wife on all counts of the indictment and found Fox guilty on counts 2 through 12 and 14. The district court entered a judgment of acquittal on mail fraud counts 5-8 and 12 due to insufficient evidence of the use of the United States Postal Service. Fox timely appealed his remaining convictions for mail fraud and for equity skimming.

## DISCUSSION

### Sufficiency of the Evidence

Fox argues that the government offered insufficient evidence to sustain his convictions for mail fraud and equity skimming. He also asks us to consider whether the district court committed error by admitting evidence of the suspension of his real estate license under Federal Rule of Evidence 404(b). We first address the sufficiency of the evidence supporting his convictions.

<u>Mail Fraud Convictions</u>

In examining the adequacy of the evidence supporting a jury's verdict we determine whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. <u>United States v. Sneed</u>, 63 F.3d 381, 385 (5th Cir. 1995). To convict for mail fraud under 18 U.S.C. § 1341, the government must establish (1) a scheme to defraud, (2) which involves a use of the mails, and (3) that the mails were used for the purpose of executing the scheme. <u>United States v. Pazos</u>, 24 F.3d 660, 665 (5th Cir. 1994).

Fox makes two points regarding his mail fraud convictions. First, that the government failed to prove adequately that the United States Postal Service delivered the rent payments he received. His second contention is that even if the Postal Service were the courier, not all of the rent payments were transferred via mail and that he in fact collected some checks personally. Because the government could not prove definitively, through its witnesses, which checks came by mail and which he collected, there was insufficient evidence to convict him.

Counts 2, 3, and 4 of the indictment are based upon checks from the Strains, who rented property in Lubbock. Fox says that there was never any testimony at trial that he received the checks

3

referred to in those counts via the Postal Service. Therefore, he argues that a rational jury could not have found beyond a reasonable doubt that he did not collect those particular checks himself nor that, even had they been mailed, the Postal Service was the means of delivery and not some other carrier.

Counts 9 and 10 concern property rented by DePaul, who testified that he would sometimes mail the rent checks but did not specify that he used the United States Postal Service. Fox argues that the term "mail" was used generically throughout the trial to refer to transmission via both the United States Postal Service and Federal Express. Therefore, this use was too broad and equivocal to support the convictions on counts 2, 3, 4, 9, and 10.

Proof of the use of the Postal Service may be made through direct or circumstantial evidence, but in either case the government must prove such use beyond a mere likelihood or probability. United States v. Massey, 827 F.2d 995, 999 (5th Cir. 1987). It is a question of fact, that the jury must resolve on proper instructions. United States v. Boyd, 566 F.2d 929, 937 (5th Cir. 1978). The government satisfied this burden for counts 2 through 4 when Strain testified that the exhibits underlying those counts were copies of the checks he mailed to Fox for rent. Similarly, DePaul testified that the two checks comprising counts 9 and 10 were mailed by him to Fox.

We have held that a rational trier of fact may find from such witness testimony evidence of mail fraud. United States v. Matt, 838 F.2d 1356, 1359 (5th Cir. 1988). The defendant In Matt was a division manager of a tobacco company. In that capacity he was responsible for preparing two sets of expense reports. The first set itemized monthly expenses. The second set recorded payments to retailers for placing promotional displays in their establishments. The scheme involved replacing the complimentary tobacco products used for the displays with actual resale merchandise. The proceeds from this merchandise went to Matt. Matt accomplished his deceit by forcing sales representatives to file false reports concerning the placement of the complimentary goods. He then would mail these false reports to the company. The mailing of these reports to the company constituted the mail fraud charge. The defendant argued that the testimony of the government's only witness as to the receipt of the mail was insufficient absent supporting evidence. In upholding his conviction, we described

4

a jury's reliance on such testimony as a credibility choice. The facts of the case, especially as viewed in a light favorable to the government, were enough to support the jury's finding that Matt had used the mails to send his reports.

Likewise, as to count 11, we must accept the jury's belief in Elizabeth Jackson's assertion that the rent check made out to Fox was mailed, absent countervailing evidence. Supporting this inference is the fact that attached to the check was a letter clearly postmarked giving thirty days' notice before Jackson was going to terminate the lease. The letter also requested that Fox return her deposit. It is perfectly reasonable that, since they were attached, the check traveled through the mails along with the postmarked letter.

Fox says that there was insufficient evidence that he defrauded Jackson because he returned her deposit and did not penalize her for breaking the lease. This argument is without merit. Fox fails to note that he returned only the deposit and retained all other rental payments while still failing to pay any of the mortgage payments on the property.

Contrary to Fox's second contention that the testimony by itself was too general to mean the United States Postal Service, the term "mailed" is sufficiently discrete to support such an inference. To support his argument, Fox cites a Third Circuit case reversing a conviction for mail fraud where, although the government offered testimony specifically referring to a mailing, it failed to show that it was the business practice in insurance claims to use the United States Postal Service. United States v. Hart, 693 F.2d 286 (3d Cir. 1982). Fox's recital of Hart is incorrect. The pivotal term in that case was "sends." The government argued that a jury could infer from that word that the claim forms underlying the mail fraud conviction were mailed. The Third Circuit accepted the government's argument and found "sends" to be too generic whereas "mail" denoted a "specific mode of transmission." Therefore, Hart actually supports our determination that the jury understood "mail" in its common meaning, that is, the United States Postal Service.

Equity Skimming

Fox again raises a sufficiency of the evidence claim in appealing his conviction for equity

skimming (count 14) under 12 U.S.C. § 1709-2.

Fox argues that the government failed to prove an essential element of the violation, namely that he acted with the specific intent to defraud the sellers of the real estate or the government. Fox maintains that the evidence shows he only began renting properties when he was unable to sell the homes in a timely manner. He was in the business of buying and selling properties prior to their notes becoming due, but when the housing market collapsed, Fox rented the properties so that he would be able to continue to try to sell them. Further, Fox says he informed the sellers and renters that he intended to sell the properties. He also complains that to impose criminal liability on this evidence would effectively make equity skimming a strict liability offense.

> We have noted that the equity skimming statute mandates criminal penalties for
>
> [w]hoever, with intent to defraud, willfully engages in a pattern or practice of (1) purchasing one- to four-family dwellings . . . which are . . . in default within one year subsequent to the purchase and the loan is ... guaranteed by the Veterans' Administration, or the loan is made by the Veterans' Administration, (2) failing to make payments under the mortgage or deed of trust as the payments become due, regardless of whether the purchaser is obligated on the loan, and (3) applying or authorizing the application of rents from such dwellings for his own use.

United States v. Thorn, 917 F.2d 170, 173-74 (5th Cir. 1990). Proof of intent to defraud "may arise by inference from all of the facts and circumstances surrounding a transaction." United States v. Aubrey, 878 F.2d 825, 827 (5th Cir. 1989). There is no dispute as to whether the Veterans' Administration backed the loan.

Fox is wrong when he says there must be proof he meant to defraud the government. The statute speaks for itself, and it says nothing about victimizing the government, or sellers of the real estate for that matter. See United States v. Laykin, 886 F.2d 1534, 1538-39 (9th Cir. 1989), cert. denied, 496 U.S. 905, 110 S. Ct. 2586, 110 L. Ed. 2d 267 (1990).

The scheme underlying count 14 is also the basis of counts 2-4 and 9-11. There is no need to recount the scheme and the incriminating testimony presented in the prior discussion of the mail fraud convictions. We need only add that it appears a reasonable jury could conclude that Fox never intended to pay the mortgages on the properties at issue and that Fox defrauded the sellers of those

properties by failing to inform them that he would only make the mortgage payments if he sold the properties at a profit. Despite the fact that Fox made mortgage payments on some of the properties, we find the evidence sufficient to support the jury verdict on the count of equity skimming.

**Admitting Evidence of Prior Disciplinary Action**

Fox says the district court erred in admitting evidence under Federal Rule of Evidence 404(b) of the disciplinary action of the Texas Real Estate Commission. Evidence of prior acts is never admissible to show character and action in conformity therewith. It is, however, admissible if relevant to issues such as intent, plan, knowledge, motive, or absence of mistake. The second concern is that the prejudicial effect of the evidence not outweigh its probative value as proscribed by Rule 403. United States v. Beechum, 582 F.2d 898, 910-11 (5th Cir.) (en banc), cert. denied, 440 U.S. 920 (1979). Fox contends that the government failed to satisfy either prong. He tries to distinguish the Commission's action as a non-judicial, real estate industry dispute over misrepresentations to a seller. In contrast, the government is charging him with assuming notes and willfully failing to make mortgage payments under those notes. The government correctly characterizes these arguments as distinctions without a difference. The issue of intent to defraud, an element of the equity skimming offense, was disputed at trial. In that regard, the Commission's disciplining of Fox for nearly identical prior conduct is relevant to intent.

Fox also maintains that the district court failed to make specific findings on the record regarding the relative weights of the prejudice of such evidence and its probative value. He claims that he requested such on-the-record findings at several stages before and during the trial and that the district court was required to make such findings. United States v. Anderson, 933 F.2d 1261, 1269 (5th Cir. 1991).

According to the trial transcript, Fox raised the issue of the admissibility of the prior disciplinary action during the pre-trial conference. At that time the trial court referred to the Beechum balancing test but stated that it did not have enough facts to make the necessary findings at that time. During the trial, Fox objected to the admission of the evidence but did not specifically

7

request an on-the-record articulation of the Beechum's probative value/prejudice inquiry.

In United States v. Robinson, 700 F.2d 205 (5th Cir. 1983), cert. denied, 465 U.S. 1008, 105 S. Ct. 1003, 79 L. Ed. 2d 235 (1984), we held that

> in Rule 404(b) cases an on-the-record art iculation by the trial court of Beechum's probative value/prejudice inquiry [is warranted] when requested by a party.  In the absence of on-the record findings in response to such a request, we will be obliged to remand unless the factors upon which the probative value/prejudice evaluation were made are readily apparent from the record, and there is no substantial uncertainty about the correctness of the ruling.

Id. at 213 (emphasis added; footnote omitted).  Fox's failure to request specifically an on-the-record articulation of the Beechum factors in considering the admissibility of the extrinsic offense evidence is fatal to his appeal on this point.

Our holding in Robinson has become well established.  In United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir. 1989), the Sixth Circuit applied Robinson to a defendant's argument that he should receive a new trial based on the district court's failure to make findings in the record when it ruled on a 404(b) motion by the government.  Even though the defendant objected to the evidence,

> [a] review of the record . . . discloses that the issue of probative value/prejudicial effect was not mentioned by defense counsel during the colloquy with the district judge. . . . Thus, the defendant failed to request an on-the-record balancing such as might require reversal under Robinson solely due to the court's failure to make an express finding on this issue.

Id. at 950.  See also, United States v. Lavelle, 751 F.2d 1266, 1278 (D.C. Cir.), cert. denied, 474 U.S. 817, 106 S. Ct. 62, 88 L. Ed. 2d 51 (1985); United States v. Merkt, 794 F.2d 950 (5th Cir. 1986), cert. denied, 480 U.S. 946, 107 S. Ct. 1603, 94 L. Ed. 2d 789 (1987).  Still, even if the district court had erred in not making such findings, there is little uncertainty that the court properly admitted evidence of the suspension of Fox's real estate license.

We review a district court's decision to admit evidence over a Rule 404(b) objection under a heightened abuse of discretion standard in criminal cases.  United States v. Bentley-Smith, 2 F.3d 1368, 1377 (5th Cir. 1993); United States v. Wisenbaker, 14 F.3d 1022, 1028 (5th Cir. 1994).  Evidence pertaining to the suspension of Fox's real estate license goes directly to the issue of intent which is at the heart of this case.  Fox admitted at trial that the suspension of his license was a sure

8

indication that the Texas Real Estate Commission considered his actions wrong.  His suspension served as a warning, yet it was not long after his reinstatement that Fox began the scheme to defraud charged in the indictment.  The government wanted to introduce evidence that Fox admitted to wrongdoing.  The fact that he  again set out to defraud property owners and the government is relevant given his denial of any such intent.  Although this evidence does show a common scheme and prior bad conduct, it also demonstrates that Fox resumed an activity he knew to be fraudulent.

Because the suspension is so relevant to intent, even had the district court erred by not performing the Beechum balancing test, we would have to affirm its admissibility ruling.  Hence, no remand for such findings would be necessary.

AFFIRMED.