**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Howard GOODMAN, Defendant– Appellant.**

No. 90–6356.

United States Court of Appeals, Sixth Circuit.

Argued May 24, 1991.

Decided Sept. 13, 1991.

---

7. This worker, Randy Burke, conceded that when recalled he was given no guaranty about the permanency of the recall.

W. Hickman Ewing, Jr., U.S. Atty., Lawrence J. Laurenzi, Asst. U.S. Atty. (argued and briefed), Office of the U.S. Atty., Memphis, Tenn., for plaintiff-appellee.

Stephen B. Shankman (briefed), Memphis, Tenn., James G. Thomas (argued), Aubrey B. Harwell, Jr. (briefed), Neal & Harwell, Nashville, Tenn., for defendant-appellant.

Before JONES and NORRIS, Circuit Judges, JOINER, Senior District Judge.*

ALAN E. NORRIS, Circuit Judge.

Defendant, Howard Goodman, appeals his convictions for bribing radio station program directors to use musical recordings that he was promoting, in violation of the Travel Act, 18 U.S.C. § 1952, and the "payola" statute, 47 U.S.C. § 508.

## I.

Radio and Records ("R & R") is a weekly newspaper for the music and radio industry that publishes charts of music played by radio stations across the country. R & R obtains the chart information from selected radio stations. A selected station is required to telephone R & R every week with its weekly playlist and hottest records. In addition, the station reports any new records added to its playlist during the week. This information is then compiled and released by R & R.

During the years in question, defendant promoted records by contacting radio stations throughout the United States in an effort to persuade the stations to add records to their playlists. He was compensated by record companies based upon the success of his endeavors.

WQID is a radio station located in Jackson, Mississippi. In 1982, defendant contacted Kirk Clyatt, WQID's program director. He told Clyatt that he would pay him to add records to WQID's playlist and report those "adds" to R & R. In early 1984, Clyatt left WQID to work for KDON in California, and defendant began paying Clyatt for adding records to that station's playlist.

Clyatt received money from defendant on a weekly basis. He usually added five records a week and always added at least one a week. Clyatt testified that in 1982 he received between $8,000 and $10,000; in 1983, between $15,000 and $20,000; in 1984, approximately $10,000; and in 1985, $25,000. He never told WQID or KDON about receiving money from defendant.

Jim Chick was program director at WTYX in Jackson. Defendant also approached him in 1982 with an offer to pay for records added to the station's playlist and reported to R & R. Chick averaged two to three payments a month, and testified that he added records which he would not have included were he not being paid by defendant.

A review of defendant's bank records showed that his corporation had a gross income of approximately $500,000 a year for the years 1982 through 1985. In 1984, the total cash withdrawn from his personal account was $168,800, withdrawn on a weekly basis. In 1985, defendant withdrew approximately $182,615 in cash; in 1986, the total cash withdrawn dropped to $49,900.

Clyatt and Chick testified for the government under grants of immunity. Defendant denied that he paid program directors to add records to their playlists and said

---

* The Honorable Charles W. Joiner, United States District Court for the Eastern District of Michigan, sitting by designation.

that he withdrew so much cash from his account because he was a big spender.

## II.

### A. "Subsequent Act" Element of the Travel Act

■ The indictment charged defendant with four counts of violating the Travel Act, 18 U.S.C. § 1952.[1] These counts were based upon his mailing cash from Memphis, Tennessee, to Chick in Jackson, Mississippi, on November 23, 1984, December 7, 1984, December 21, 1984, and January 18, 1985. The government's theory was that the cash payments constituted bribes under Mississippi's commercial bribery statute and were made in return for Chick's reporting defendant's records to R & R magazine as new "adds" to the station's weekly playlist.

According to the evidence, over the course of a relationship lasting several years, defendant and Chick followed a set routine. Defendant would call Chick on Friday with a proposed list of "adds" for the following week. By Monday, Chick would advise defendant of the records he would add and report to R & R. The money defendant then mailed would be received by Chick on Thursday or Friday, and the process would begin all over again.

Defendant contends that, since the mailings occurred after Chick had both added the records to the playlist and informed defendant of the new "adds" for the week, he could not have violated the Travel Act because it requires performance of a proscribed activity subsequent to the mailing (the "subsequent act" element). Although defendant concedes that the indictment sufficiently alleged subsequent acts, he contends that the government offered no proof that he did anything *after* the use of the mails.

The government contends that it did prove the "subsequent act" element of the Travel Act and, in support of its contention, relies primarily upon *United States v. Eisner*, 533 F.2d 987 (6th Cir.1976), *cert. denied*, 429 U.S. 919, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976). In *Eisner*, the defendant received and deposited a series of fifteen checks; the interstate traveling of each of the checks constituted the use of a facility in interstate commerce. "Each of the checks constituted payment for illegal activities, and thus fourteen (14) of the checks were followed by additional illegal activity." *Id.* at 993. On the basis of these facts, this court held that the continued performance of illegal activity after the use of interstate facilities met the Travel Act's requirement of a "subsequent act."

The weakness of defendant's theory in this case is that it is dependent upon our regarding each of the four scenarios in isolation: as separate and distinct episodes in which the completed bribe always preceded the mailing of payment. However, there were multiple payments for multiple "adds," and the evidence does not support precise compartmentalization. The events were thus linked together in a continuing scheme.

The government presented evidence that defendant called Chick after mailing the money in order to give him information about new adds for the following week. Chick testified that the money from defendant influenced his decision to use defendant's promotional lists. The relationship between the two was lengthy and they followed a routine course of conduct. From this evidence, one can reasonably conclude that receipt of the mailed money had the effect intended by defendant; it influenced Chick's decision to continue the relationship. The mailing served both to reward a past transgression and to influ-

1. Title 18 U.S.C. § 1952 reads as follows:
   (a) Whoever travels in interstate ·... commerce or uses the mail ... with intent to—
   ....
      (3) ... promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the [above] acts ... shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
   (b) As used in this section ... "unlawful activity" means ... (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States....

ence or promote a future one. The evidence of the illegal activity that then followed the mailing in keeping with the ongoing continuum of promoting bribery satisfied the subsequent act element of the statute. *Id.*

Viewing the evidence in the light most favorable to the government, a rational juror could find that defendant committed acts in furtherance of bribery after using the mails.

### B. Sufficiency of Evidence for Conviction under Count 3

■ Even though Count 3 adequately charges a subsequent act, defendant maintains that his conviction under that count must be reversed because of insufficient evidence. Count 3 charges defendant with mailing a bribe to Jackson, Mississippi, on November 23, 1984. Whereas the other three Travel Act counts were supported with specific proof of their dates, the government offered no specific proof of a mailing on November 23, 1984.

Although Chick testified to receiving money from defendant two to three times a month from September 1982 through January 1985, this testimony is too vague to support defendant's conviction under Count 3, which is predicated on a November 23, 1984 mailing. Although the government may have established a standard practice of defendant mailing money to Chick two to three times a month, such evidence is insufficient to constitute proof beyond a reasonable doubt that defendant mailed the money in question on November 23, 1984. *See, e.g., United States v. Burks*, 867 F.2d 795, 797 (3d Cir.1989). Accordingly, we reverse defendant's conviction under Count 3 of the indictment.

### C. Intent to Conspire to Violate the Travel Act

■ Defendant notes that it is well-settled that "[i]n order to sustain a judgment of conviction on a charge of conspiracy to violate a federal statute, the Government must prove at least the degree of criminal intent necessary for the substantive offense itself." *United States v. Feola*, 420 U.S. 671, 686, 95 S.Ct. 1255, 1265, 43 L.Ed.2d 541 (1975). Defendant contends that his conviction under Count 2 of the indictment, charging him with conspiring to violate the Travel Act, must be reversed because the government presented no evidence that he intended to perform an act subsequent to the use of the mails. However, as we pointed out in disposing of defendant's previous "subsequent acts" argument, there was evidence that he committed acts subsequent to his use of the mails. From this evidence, a reasonable jury could conclude that defendant intended to commit the subsequent acts and also intended that program directors would be influenced by payments for previous services to perform future services in expectation of further payment.

### D. Jury Reliance on Non–Criminal Acts

Defendant next contends that Count 2 of the indictment must be reversed because it allowed the jury to convict for a non-criminal act. We do not consider the merits of defendant's argument on this issue because he failed to raise the issue before the district court.

### E. Payola Statute Convictions

■ Defendant maintains that the government failed to prove facts sufficient to support his convictions for substantive violations of the "payola" statute (Counts 4, 5, 7, and 10–15). This statute, set forth in 47 U.S.C. § 508,[2] forbids the payment of

---

**2.** Section 508 provides as follows:

(a) ... any employee of a radio station who accepts or agrees to accept from any person ..., or any person ... who pays or agrees to pay such employee, any money ... for the broadcast of any matter over such station shall, in advance of such broadcast, disclose the fact of such acceptance or agreement to such station.

(b) ... any person who, in connection with the production or preparation of any program or program matter which is intended for broadcasting over any radio station, accepts or agrees to accept, or pays or agrees to pay, any money ... for the inclusion of any matter as a part of such program or program matter, shall, in advance of such broadcast, disclose

money to radio station employees "[f]or the inclusion of any matter as a part of [the] program or program matter" unless the payment is disclosed to the payee's employer. Defendant contends that section 508 requires actual broadcast of the matter for which payment was made. In support of this argument, defendant refers to the language of section 508 and contends that the phrases "[disclosure is required] in advance of broadcast" and "[disclosure must be made] to the licensee of such station over which such program is broadcast" imply a requirement of actual broadcast.

Assuming *arguendo* that his records were actually played on the radio, defendant further contends that the government failed to prove that he intended that the records be played on the radio. In support of this assertion, defendant relies upon the testimony of Kirk Clyatt. He cites Clyatt's testimony that defendant "was interested in nothing but the adds." Defendant also points to Clyatt's testimony that the money he received was for the adds that he reported to R & R magazine. Finally, defendant notes that Clyatt testified, "I don't think [defendant] was concerned whether we played the record or not. His concern was whether or not the record was reported to Radio and Records magazine." Defendant maintains that, in the light of this testimony, no reasonable jury could have found that he had any intent to influence the material broadcast over the radio.

We disagree with defendant's contention that the payola statute requires proof of an actual broadcast. Under the plain language of the statute, the government need only prove that defendant paid money for the purpose of having his records broadcast, whether or not they actually were broadcast. The government presented sufficient evidence to meet this burden. The evidence shows that defendant paid program directors to put his records on their playlists. Since paying to have records placed on the playlists contemplates having the records played on the air, this evidence is sufficient to meet the requirements of the statute. We therefore affirm defen-

dant's convictions under Counts 4, 5, 7, and 10–15.

For many of the same reasons, we reject defendant's contention that there was insufficient evidence to support his conviction under Count 1 for conspiracy to violate 47 U.S.C. § 508.

### F. Adequacy of Count 1

Defendant contends that Count 1 fails to describe a violation of federal law, and certainly not a violation of 47 U.S.C. § 508. This is simply incorrect. Although Count 1 may be somewhat vague, it adequately sets forth both the elements of section 508 and a specific reference to the section.

### III.

For the reasons stated above, we reverse defendant's conviction under Count 3, and affirm the convictions under all other counts.

---

the fact of such acceptance or payment or agreement to the payee's employer....